NAPOLI SHKOLNIK PLLC
Jennifer Liakos (SBN 207487)
525 South Douglas Street, Suite 260
El Segundo, CA 90245
Telephone: (310) 331-8224
Fax: (646) 843-7603
Email: jliakos@napolilaw.com

Paul B. Maslo (*pro hac vice* forthcoming)
Andrew Dressel (*pro hac vice* forthcoming)
360 Lexington Avenue, 11th Floor
New York, New York 10017
Telephone: (212) 397-1000
Fax: (646) 843-7603
Email: pmaslo@napolilaw.com
adressel@napolilaw.com

*Counsel for Plaintiff and the Proposed Class*

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARTIN DULBERG, individually, and on behalf of all others similarly-situated,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., and RASIER, LLC,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Martin Dulberg ("Plaintiff" or "Dulberg"), by and through his counsel, alleges the following on behalf of himself and those similarly situated:

## INTRODUCTION

1. Uber Technologies, Inc. and Raiser, LLC (collectively, "Defendants" or "Uber") provide a mobile phone application that allows consumers to obtain transportation services from Uber's drivers. Plaintiff brings this action on behalf of himself and a class of similarly drivers who have contracts with

Uber to receive a specific portion of the fare Uber charged consumers, but who did not receive the promised fees.

2. More specifically, Uber states that it will provide its drivers with a certain percentage of the fare charged to passengers. Uber, however, does not remit these promised amounts. Instead, it charges passengers a flat fee at the beginning of a ride, based on Uber's projections of the distance and time involved in the ride, but then gives its drivers a portion of a separate amount calculated based on actual miles and minutes driven. Because Uber overestimates its initial fee, drivers are paid less than they are contractually entitled to.

3. For example, assume that a driver is contractually entitled to 80% of the fare (what the customer is actually charged for the ride). When a customer books a ride, Uber charges the rider $100 based on its aggressive estimate of what the ride should cost. Under the driver's agreement, he is entitled to $80 (80% of $100). But, instead of giving the driver $80, Uber waits until the end of the ride and calculates a separate amount based on actual miles/time. As is usually the case, Uber overestimated the fare and the end calculation is lower: $90. Uber would remit to driver the driver only $72 (80% of $90). Thus, Uber collected $100, but only paid the driver $72 (72%, not the 80% he is contractually entitled to).

**PARTIES**

4. Dulberg is a resident of Raleigh, North Carolina. Dulberg has been an UberX driver since May 2014 and an Uber Select driver since February 2015.

5. Uber Technologies, Inc. is a Delaware corporation headquartered at 1455 Market Street, San Francisco, CA 94103.

6. Defendant Rasier, LLC, a subsidiary of Uber and the equivalent of Uber for the purposes of this action, is a Delaware limited liability company headquartered at 1455 Market Street, San Francisco, CA 94103.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 and the parties are diverse. Plaintiff is a citizen of the State of North Carolina and Defendants are citizens of the State of Delaware.

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because the aggregate claims of the Class (as defined below) exceed the sum or value of $5,000,000.00, there is minimal diversity of citizenship between Plaintiff and Defendants, and the class consists of more than 100 members.

9. This Court has personal jurisdiction over Uber because § 15.1 of the Technology Services Agreement (the "Agreement") between the parties states that Uber submits "to the exclusive jurisdiction of the state and federal courts located in the City and County of San Francisco, California." A copy of the Agreement is attached as **Exhibit 1**.

10. Venue is also proper in this District under § 15.1 of the Agreement.

11. Plaintiff alleges on information and belief that (1) each Defendant acted in all manners relevant to this action as the agent of the other Defendant and carried out joint business plans and operations; and (2) the acts and omissions of each Defendant are legally attributable to the other Defendant.

## FACTUAL ALLEGATIONS

12. Plaintiff signed up as a driver for UberX in May 2014 and as a driver for UberSelect in February 2015.

13. Uber's application or "app" allows consumers to summon, arrange, and pay for transportation services electronically through their mobile phones. Payment for transportation arranged through Uber's app is made via consumers' credit card accounts to Uber, after the consumer provides the necessary credit card information to Uber.

14. Section 15.1 of the Agreement provides that "the interpretation of this Agreement shall be governed by California law, without regard to the choice or conflicts of law provisions of any jurisdiction."

15. Section 4.1 of the Agreement states that drivers "are entitled to charge a fare for each instance of completed Transportation Services provided to a User that are obtained via the Uber Services ('Fare'), where such Fare is calculated based upon a base fare amount plus distance (as determined by Company using location-based services enabled through the Device) and/or time amounts, as detailed at www.uber.com/cities for the applicable Territory ('Fare Calculation')."

16. Section 4.1 of the Agreement further states that "the parties acknowledge and agree that as between you and the Company, the Fare is a recommended amount, and the primary purpose of the pre-arranged fare is to act as the default amount in the event you do not negotiate a different amount." The Fare, therefore, is the amount that Uber charges passengers, *i.e.*, the "default amount."

17. Section 4.4 of the Agreement states that "[i]n consideration of Company's provision of the Driver App and the Uber Services for your use and benefit hereunder, you agree to pay Company a service fee on a per Transportation Services transaction basis calculated as a percentage of the fare determined by the Fare Calculation (regardless of any Negotiated Fare), as provided to you via email or otherwise made available electronically by Company from time to time for the applicable territory ('Service Fee')."

18. In the Service Fee Addendum (the "Addendum") presently applicable to Plaintiff, attached as **Exhibit 2**, it states that UberX drivers who started with Uber prior to November 23, 2015, are to turn over 20% of the Fare as a Service Fee and UberSelect drivers are to turn over 28% of the Fare to

Uber.[1] In other words, drivers are promised that they will be able to retain 80% of the Fare charged to passengers for UberX rides and 72% of the Fare charged to passengers for UberSelect rides.

19. Uber has switched its methodology for charging customers. Customers are now charged a Fare before the ride begins. This Fare is based on Uber's inflated projection of the distance and time involved in a particular ride. Under the Agreement and Addendum, the driver is entitled to a percentage of the Fare (the fee that the customer pays).

20. Nonetheless, Uber pays its drivers based on a calculation of the distance and time actually driven. This creates a discrepancy between the Fare charged to passengers and the amount that Uber improperly uses as a basis for paying drivers, a discrepancy that Uber conceals from drivers like Plaintiff. But the Agreement clearly indicates that the Fare charged to passengers should be the same Fare used for the Fare Calculation. Drivers are to be paid based upon the amounts customers are paying.

21. For example, on February 2, 2017, Plaintiff drove an UberX passenger from 3408 Cherry Lane in Raleigh, North Carolina to 101 Macaw Street in Raleigh, North Carolina. The passenger was charged $15.38. This is the Fare. The Booking Fee in Raleigh at the time was $1.80. So, Dulberg should have made 80% of ($15.38 - $1.80) = $10.86.

22. But Dulberg was paid $9.91 (80% of Uber's backend calculation of $12.39). This is 95 cents less than Dulberg should have made under the Agreement (the difference is magnified on longer rides). Indeed, instead of receiving the promised 80% of the Fare, Dulberg received approximately 73%.

23. Plaintiff also provided an UberX ride on February 2, 2017, for a passenger travelling from 8851 Ellstree Lane in Raleigh to 3412 Cherry Lane in Raleigh. The passenger was charged $14.77. That is the Fare. So, Dulberg should have made 80% of ($14.77 - $1.80) = $10.38.

---

[1] While these percentages change for drivers who started with Uber after November 23, 2015, that difference is inconsequential to the claims set forth in this Complaint.

24. But Uber paid Dulberg based on its backend calculation of $12.55. Dulberg was paid 80% of $12.55 = $10.04. This is 34 cents less than what he should have been paid under the Agreement. Indeed, instead of receiving the promised 80% of the Fare, Dulberg received a little over 77%.

25. This failure to pay the amounts promised under the Agreement and the Addendum is a material breach of the Agreement which has harmed Dulberg.

## CLASS ACTION ALLEGATIONS

26. Plaintiff commences this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, including Rule 23(b)(3), on behalf of the following class:

> All natural persons nationwide who have worked or who continue to work as a driver for Uber during the time period it instituted the billing practice described in this Complaint and who opted out of arbitration.

27. Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint. Excluded from the Class are Defendants and their affiliates, parents, subsidiaries, employees, officers, agents, and directors; government entities or agencies, their affiliates, employees, officers, agents, and directors in their governmental capacities; any judicial officer presiding over this matter and the members of their immediate families and judicial staff; and class counsel.

28. **Numerosity**: The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. The precise number of such persons is unknown because the data required to calculate that number is presently within the sole possession, custody, and control of Defendants. Upon information and belief, there are thousands of Uber Drivers who are not subject to arbitration.

29. **Commonality**: There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members, including, but not limited to, the following:

a. Whether, under California law, which applies to all drivers pursuant to the Agreement's choice-of-law clause, Uber breached the Agreement and Addendum, the terms of which apply to all drivers;

b. The proper measure of damages and the proper measure of restitution recoverable by Class members; and

c. Additional common questions of law and fact as developed during the discovery phase of this litigation.

30. **Typicality**: Plaintiff's claims are typical of the claims of the Class, as such claims could be alleged by any member of the Class, and the relief Plaintiff seeks is typical of the relief that Class members seek. All of the Class members were subject to the same pattern and practice of Defendants as alleged herein. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures of the Defendants.

31. **Adequacy of Representation**: Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests adverse to the Class. At all relevant times, Plaintiff and Class members are and have been similarly situated and have been subject to the Agreement and Addendum.

32. **Superiority**: Prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The losses, injuries, and damages are small as relevant to a class action analysis, such that without class treatment, individual action by each Class member would be cost-prohibitive.

33. The Class members are also readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are known to Defendants. The number and identity of the Class members are determinable from the records of Defendants.

34. The representative and his chosen attorneys are familiar with the subject matter of the lawsuit and have full knowledge of the allegations contained in this complaint so as to be able to assist in its prosecution. In addition, the representative's attorneys are competent in the relevant areas of the law and have sufficient experience to vigorously represent the Class. Furthermore, the resources available to counsel ensure that the litigation will not be hampered by a lack of financial capacity. Plaintiff's attorneys have sufficient financial resources and are willing to absorb the costs of the litigation.

## CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT

35. Plaintiff incorporates by reference all the foregoing paragraphs as though fully set forth herein.

36. Defendants executed the Agreement and Addendum. Through these agreements, Defendants procured the driving services of Plaintiff and the Class. These driving services constitute adequate consideration and Plaintiff and the Class have performed the driving services outlined in these agreements.

37. Section 4.1 of the Agreement states that drivers "are entitled to charge a fare for each instance of completed Transportation Services provided to a User that are obtained via the Uber Services ('Fare'), where such Fare is calculated based upon a base fare amount plus distance (as determined by Company using location-based services enabled through the Device) and/or time amounts, as detailed at www.uber.com/cities for the applicable Territory ('Fare Calculation')."

38. Section 4.1 of the Agreement further states that "the parties acknowledge and agree that as between you and the Company, the Fare is a recommended amount, and the primary purpose of the

pre-arranged fare is to act as the default amount in the event you do not negotiate a different amount." The Fare, therefore, is the amount that Uber charges passengers, *i.e.*, the "default amount."

39. Section 4.4 of the Agreement states that "[i]n consideration of Company's provision of the Driver App and the Uber Services for your use and benefit hereunder, you agree to pay Company a service fee on a per Transportation Services transaction basis calculated as a percentage of the fare determined by the Fare Calculation (regardless of any Negotiated Fare), as provided to you via email or otherwise made available electronically by Company from time to time for the applicable territory ('Service Fee')."

40. The Addendum states that drivers will be able to retain 80% of the Fare charged to passengers for Uber X rides and 72% of the Fare charged to passengers for UberSelect rides.

41. There is one Fare. Passengers pay it and drivers are supposed be compensated based on it.

42. In actuality, Uber charges passengers a Fare that is higher than the separate amount it uses to compensate drivers. In doing so, Uber fails to pay drivers the amounts they are owed under the Agreement and Addendum.

43. As a direct, proximate and foreseeable result of Defendants' breaches of the agreements, Plaintiff and the Class have been damaged in an amount to be determined according to proof at the time of trial.

**COUNT II**
**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

44. Plaintiff herein incorporates by reference the foregoing paragraphs as though fully set forth herein.

45. Defendants' conduct, as alleged above, constitutes a breach of the covenant of good faith and fair dealing implied in every contract under California law. This covenant requires that neither party will do anything that injures the right of the other to receive the benefits of the contract.

46. Defendants have entered into agreements with Plaintiff and the Class members by which Plaintiff and the Class members provide driving services in exchange for a certain portion of the Fare paid by passengers.

47. Defendants, by charging a greater Fare to riders than the calculation used to determine payment to drivers, have deprived Plaintiff and the Class members of the full benefits they are entitled to under the parties' agreements.

48. As a direct, proximate, and foreseeable result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiff and the Class have been damaged in an amount to be determined according to proof at the time of trial.

**COUNT III**
**PROMISSORY ESTOPPEL (in the alternative)**

49. Plaintiff herein incorporates by reference the foregoing paragraphs as though fully set forth herein.

50. Plaintiff states this claim in the alternative.

51. In inducing Plaintiff and the Class members to provide driving services to Uber's passengers, Defendants made representations in the Agreement and Addendum to Plaintiff and the Class members that Defendants would remit to Plaintiffs and Class members a percentage of the Fare charged to passengers. Plaintiff and the Class members were led to believe that Uber would base these payments on the Fare charged to Uber passengers.

52. Defendants' promises to Plaintiff and the Class members were clear and unambiguous. Plaintiffs and the Class members were to receive a percentage of the Fare charged to passengers.

53. Defendants intended to induce Plaintiff and the Class members to rely on the promises in the Agreement and Addendum in order to obtain Plaintiff's and the Class members' driving services.

54. Plaintiff and the Class members relied on Defendants' representations to their detriment, as demonstrated by their performance of driving services.

55. Plaintiff's and the Class member's reliance on Defendants' representations was reasonable and foreseeable under the circumstances. Defendants are Plaintiff's and the Class members' employer and are directly responsible for calculating their compensation.

56. Defendants did not, in fact, remit the promised percentages of the fare payments to Plaintiff and the Class members, as alleged herein.

57. As a direct, foreseeable, and proximate result of Defendants' wrongful actions alleged herein, Plaintiffs and the Class members have been damaged in an amount to be determined according to proof at the time of trial.

**COUNT IV**
**UNJUST ENRICHMENT (in the alternative)**

58. Plaintiff herein incorporates by reference all the foregoing paragraphs as though fully set forth herein.

59. Plaintiff pleads this claim in the alternative.

60. As a result of the misconduct described herein, Defendants have been unjustly enriched and have received and retained payments from Uber passengers beyond those promised in Defendants' agreement with its drivers.

61. Specifically, Defendants have retained a larger portion of the passenger Fare than they promised they would retain in the Agreement and Addendum.

62. This unjust enrichment has directly benefitted Defendants.

63. As a direct, foreseeable, and proximate result of Defendants' wrongful actions alleged herein, Plaintiff and Class members have been damaged in an amount to be determined according to proof at the time of trial.

**REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the proposed Class and Collective, requests relief against the Defendants as follows:

a. An award of damages, in an amount to be determined at trial;

b. Reasonable attorneys' fees and costs of this action;

c. Pre-judgment and post-judgment interest as provided by law; and

d. Such other and further relief that the Court may deem just and proper.

**JURY DEMAND**

Plaintiff, on behalf of himself and the proposed Class, demands a trial by jury on all claims so triable.

Dated: February 21, 2017

NAPOLI SHKOLNIK PLLC

*/s/ Jennifer Liakos*
Jennifer Liakos
525 South Douglas Street, Suite 260
El Segundo, CA 90245
Telephone: (310) 331-8224
Fax: (646) 843-7603
Email: jliakos@napolilaw.com

Paul B. Maslo (*pro hac vice* forthcoming)
Andrew Dressel (*pro hac vice* forthcoming)
360 Lexington Avenue, 11th Floor
New York, New York 10017
Telephone: (212) 397-1000
Fax: (646) 843-7603
Email: pmaslo@napolilaw.com
adressel@napolilaw.com

*Counsel for Plaintiff and the Proposed Class*

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on February 21, 2017, he electronically filed a copy of the attached via the CM/ECF filing system, which sent notification of such filing to all Filing Users.

*/s/ Jennifer Liakos*