JONATHAN R. BASS (State Bar No. 75779)
SUSAN K. JAMISON (State Bar No. 131867)
CLIFFORD E. YIN (State Bar No. 173159)
SEAN P.J. COYLE (State Bar No. 233039)
COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000
San Francisco, California 94104-5500
Telephone: 415.391.4800
Facsimile: 415.989.1663
Email: ef-jrb@cpdb.com,
ef-skj@cpdb.com,
ef-cey@cpdb.com,
ef-spc@cpdb.com

Attorneys for Defendants
UBER TECHNOLOGIES, INC.,
and RASIER, LLC

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

MARTIN DULBERG, individually, and on behalf of all others similarly-situated,

Plaintiff,

v.

UBER TECHNOLOGIES, INC., and RASIER, LLC,

Defendants.

Case No. 3:17-cv-00850-WHA

**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FRCP 12(b)(6)**

Judge: The Honorable William H. Alsup
Date: July 27, 2017
Time: 8 a.m.
Crtrm.: 8, 19th Floor

Trial Date: None Set

<u>**NOTICE OF MOTION AND MOTION**</u>

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 27, 2017 at 8:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 8 of the San Francisco Courthouse for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Uber Technologies, Inc. and Rasier, LLC will, and hereby do, move the Court for an Order dismissing Plaintiff Martin Dulberg's First Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. This motion is made pursuant to Federal Rules of Civil Procedure Rule 12, and is based upon the accompanying Memorandum of Points and Authorities, and all the pleadings, records, and files in this action.

DATED: June 19, 2017 COBLENTZ PATCH DUFFY & BASS LLP

By: /s/ *Jonathan R. Bass*
Jonathan R. Bass
Susan K. Jamison
Clifford E. Yin
Sean P.J. Coyle
Attorneys for Defendants
UBER TECHNOLOGIES, INC., and RASIER, LLC

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................... 1

ISSUE TO BE DECIDED ........................................................... 2

FACTUAL SUMMARY ........................................................... 2

I. THE AGREEMENT. ........................................................... 2

A. The Agreement Governs The Parties' Relationship. ........................................................... 2

B. Drivers Charge Riders A "Fare," Which Is A Product of A "Fare Calculation." Uber Collects That "Fare" From Riders, And Drivers Pay A Percentage of That Fare To Uber. ........................................................... 2

C. Drivers May Not Charge, And Are Not Promised, Any Amount Exceeding The Calculated "Fare." ........................................................... 3

D. The Agreement Equates The "Fare" Owed To Drivers With The "Charges" Riders Incur Only Where A Rider *Cancels* A Requested Trip. ........................................................... 4

E. Uber's Alleged Extracontractual Representation About The Upfront Price Does Not Link The Upfront Price Charged To Riders With The "Fare" Owed To Drivers Under The Agreement. ........................................................... 4

F. None Of The Other Alleged Extracontractual Statements Equate The "Fare" Owed To Drivers With The Upfront Price. ........................................................... 5

ARGUMENT ........................................................... 6

I. DISMISSAL IS PROPER WHERE THE COMPLAINT FAILS TO PRESENT A COGNIZABLE LEGAL THEORY OR FACTS SUFFICIENT TO STATE A CLAIM. ........................................................... 6

II. THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT. ........................................................... 7

A. The Construction of the Agreement is Governed by California Law, Which Requires Adherence to Its Plain Language and Respect for Its Defined Terms. ........................................................... 8

B. Uber Never Promised to Remit to Drivers a Percentage of The Total Amount Paid by Riders. ........................................................... 9

C. Plaintiff's Interpretation of Uber's Duties Is Contrary to the Text of the Agreement. ........................................................... 9

D. Plaintiff's Interpretation of the Term "Fare" Is Contrary to the Definition in the Contract. ........................................................... 10

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

E. Plaintiff's References To Uber's Role As His Collection Agent Do Not Support Plaintiff's Claim That Uber Has Breached The Agreement. .... 11

F. Uber's Extra-Contractual Statements About Rider Fares And Other Matters Do Not Support Plaintiff's Claim That Uber Has Breached The Agreement. .... 11

CONCLUSION .... 12

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 7

*Baldwin v. AAA N. California, Nevada & Utah Ins. Exch.*,
1 Cal.App.5th 545, 555 (Ct. App. 2016) .......... 9

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 7

*Darnaa, LLC v. Google Inc.*,
No. C 15-03221 WHA, 2017 WL 679404 (N.D. Cal. Feb. 21, 2017) .......... 10

*FiTeq Inc. v. Venture Corp.*,
169 F.Supp.3d 948 (N.D. Cal. 2016) .......... 8

*Grebow v. Mercury Ins. Co.*,
241 Cal.App.4th 564 (Cal. App. 2015) .......... 8, 10

*Herskowitz v. Apple, Inc.*,
940 F.Supp.2d 1131 (N.D. Cal. 2013) .......... 9

*Hinds Inv., L.P. v. Angioli*,
654 F.3d 846 (9th Cir. 2011) .......... 6

*Johnson v. Fed. Home Loan Mortg. Corp.*,
793 F.3d 1005 (9th Cir. 2015) .......... 7, 9

*Lewis v. YouTube, LLC*,
244 Cal.App.4th 118 (Cal. App. 2015) .......... 8, 10

*Marder v. Lopez*,
450 F.3d 445 (9th Cir. 2006) .......... 8, 11

*Parrish v. Nat'l Football League Players Ass'n*,
534 F.Supp.2d 1081 (N.D. Cal. 2007) .......... 7

*Rosen v. State Farm Gen. Ins. Co.*,
30 Cal.4th 1070 (Cal. 2003) .......... 8, 9, 10

*S. California Counseling Ctr. v. Great Am. Ins. Co.*,
162 F.Supp.3d 1045 (C.D. Cal. 2014) .......... 9

*Stanford Univ. Hosp. v. Fed. Ins. Co.*,
174 F.3d 1077 (9th Cir. 1999) .......... 10

*TRB Inv., Inc. v. Fireman's Fund Ins. Co.*,
40 Cal.4th 19 (Cal. 2006) .......... 8

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

*Tritz v. U.S. Postal Serv.*,
721 F.3d 1133 (9th Cir. 2013)....7

*Wright v. Oregon Metallurgical Corp.*,
360 F.3d 1090 (9th Cir. 2004)....7

*Zepeda v. PayPal, Inc.*,
777 F.Supp.2d 1215 (N.D. Cal. 2011)....7, 9

**Statutes**

Cal. Civ. Code § 1636....8

Cal. Civ. Code § 1638....8, 11

Cal. Civ. Code § 1639....8, 11

Cal. Civ. Code § 1644....8, 10

**Other Authorities**

Federal Rules of Civil Procedure, Rule 12(b)(6)....6

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

## INTRODUCTION

Plaintiff Martin Dulberg's First Amended Complaint ("FAC") – which contains a single cause of action for breach of contract – fails to state a claim upon which relief can be granted.

Plaintiff, a North Carolina driver with Uber, contends that Defendants Uber Technologies, Inc. and its subsidiary Rasier, LLC (collectively, "Uber") breached a written contract with him (the "Agreement") because it paid him the "agreed-upon percentage" of the sum generated by its "backend" fare calculation. But that was not a breach of the Agreement – it is exactly what the Agreement provides. (FAC, Exh. 1, ¶ 4.1.) Contrary to the mischaracterization of the Agreement set forth in the Complaint, the Agreement itself does not base driver payments on "whatever money passengers pay" or get "charged" (whether "upfront" or at the "end of the ride"). Plaintiff's contention – that the "fare" assessed to riders, or paid by riders (whether upfront or otherwise), constitutes the "Fare" owed to Drivers – is irreconcilable with the contract's actual terms.

The Uber software application enables independent drivers ("Drivers") to receive transportation requests from riders. The Agreement specifies how Drivers are paid. The Agreement, which is attached to the FAC, provides that the only payment to which a Driver is entitled for a completed trip is the "Fare." The "Fare" is the product of a "Fare Calculation." (FAC, Exh. 1, ¶ 4.1) The Fare Calculation adds a flat base amount to locality-based rates for the time and/or distance driven. (*Id*.) The Fare Calculation determines the "Fare" that the Driver is authorized to charge the rider. (*Id.*) The Fare can only be charged for an "instance of completed Transportation Services." (*Id.*) The "Fare provided by the Fare Calculation is the *only* payment" the Driver is entitled to "receive" for providing the transportation service to the rider. (*Id.*) (Emphasis added.)

Plaintiff nevertheless insists that he was entitled to his percentage of "whatever money passengers pay" or are "charged" for a trip. (FAC ¶¶ 2, 22, 29, 30, 31, 47.) His tortured construction of the Agreement is that "[t]he money that passengers pay for a ride, minus Uber's service fee, belongs to Plaintiff and other drivers." (*Id.* at ¶ 47.) But that is simply a misreading. The Agreement does not say that the rider's payment belongs to the Driver. It says that the "Fare" produced by the "Fare Calculation" belongs to the Driver.

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

Plaintiff points to various provisions of the contract in support of his interpretation. (*Id.* at ¶¶ 14-17, 20-26, 47, 48.) But none of those provisions supports Plaintiff's conclusory assertion that the "Fare" charged to riders by Drivers equals the amount riders pay. Indeed, the *only* time the contract deems the amount *actually charged* to a rider as "the Fare" payable to Drivers is when there is no trip at all, because the rider has cancelled his ride request. (FAC, Exh. 1, ¶ 4.5.) If that occurs, the would-be rider's cancellation charge is deemed to be "the Fare" for purposes of determining the Driver's "remittance." (*Id.*) Otherwise, the Driver is entitled "only" to the "Fare provided under the Fare Calculation," and to no other or "additional amounts." (FAC, Exh. 1, ¶¶ 4.1, 4.7.)

Uber is honoring the express terms of its contract by remitting Plaintiff's percentage of the Fare produced by the Fare Calculation. It is not breaching that contract by its alleged failure to base that remittance on what "passengers" actually "pay."

Because no further amendment could salvage the claim, the First Amended Complaint should be dismissed without leave to replead.

## ISSUE TO BE DECIDED

Should the First Amended Complaint be dismissed for failure to state a claim where the allegations of breach of contract are inconsistent with the provisions of the attached contract?

## FACTUAL SUMMARY

### I. THE AGREEMENT.

#### A. The Agreement Governs The Parties' Relationship.

Plaintiff Martin Dulberg, a resident of Raleigh, North Carolina, signed up to use Uber's software application (the "Uber App") to connect him with riders. He used the UberX product in 2014 and the Uber Select product in 2015. (FAC ¶¶ 5, 13.) The Agreement sets forth the payments he would receive for providing rides to riders (called "Users" in the Agreement) via the Uber App. (*Id.* at ¶ 1-2, 14-17. 20, 27, 32, 6-48.)

#### B. Drivers Charge Riders A "Fare," Which Is A Product of A "Fare Calculation." Uber Collects That "Fare" From Riders, And Drivers Pay A Percentage of That Fare To Uber.

Drivers can charge a "Fare" for "each instance of completed Transportation services"

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

provided to a rider via the Uber App. (FAC, Exh. 1, ¶ 4.1.) The "Fare" is a calculated amount produced by the "Fare Calculation." (*Id.*) The Fare is comprised of a base amount, plus the product of distance and/or time rates for the locality, as set forth on Uber's website at www.uber.com/cities. (*Id.*)

Uber accepts "the Fare" on behalf of Drivers. (*Id.*) "[T]he Fare provided under the Fare Calculation is the only payment you [i.e., the driver] will receive in connection with the Transportation Services." (*Id.*)

Drivers owe a percentage of the Fare produced by the Fare Calculation to Uber. (FAC ¶ 51; Exh. 1 ¶ 4.4.) This percentage is called the "Service Fee." (*Id.*) The "Agreement allows Uber to deduct [the applicable] percentage of the Fare" before the remainder of the Fare is remitted to the Driver. (FAC ¶ 2.) After the applicable Service Fee percentage is subtracted from the Fare, Plaintiff alleges that for his geographic location he is entitled to receive a net remittance of "80% of the Fare . . . for UberX rides and 72% of the Fare for . . . UberSelect rides." (FAC ¶ 51; See also Exh. 1, ¶ 4.1; Exh. 2 (describing applicable Service Fee).)[1]

### C. <u>Drivers May Not Charge, And Are Not Promised, Any Amount Exceeding The Calculated "Fare."</u>

Drivers have the contractual right to negotiate a *lower* fare amount with riders (FAC, Exh. 1, ¶ 4.1), but they disclaim any right to receive any amounts *over and above* the Fare produced by the Fare Calculation. (*Id.*, ¶¶ 4.1, 4.7.) Drivers "acknowledge and agree that that Fare will be the only payment" they "will receive in connection with the provision of Transportation Services." (*Id.*, ¶ 4.1) In a paragraph entitled "**No Additional Amounts**," Drivers acknowledge that Uber may engage in promotional activity "for the mutual benefit of the parties" seeking "to attract new Users to Uber and to increase existing Users' use of Uber's mobile application," and that Uber's efforts in that regard will not entitle the Driver "to any additional monetary amounts beyond the

[1] The amount remitted to a Driver sometimes includes tolls, fees, and taxes which the Driver incurs when providing the transportation service, and which are passed through to riders. Uber collects these amounts, along with "the Fare," from riders, in its capacity as "limited payment collections agent" for Drivers. (FAC, Exh. 1, ¶4.1.)



COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

amounts expressly set forth in this Agreement." (FAC, Exh. 1, ¶ 4.7.)

### D. **The Agreement Equates The "Fare" Owed To Drivers With The "Charges" Riders Incur Only Where A Rider *Cancels* A Requested Trip.**

Plaintiff alleges that various provisions of the Agreement equate the term "fare" or "Fare" with the amount "paid" by a "passenger" for a trip (or with the amount a rider is "actually charged" for a trip). (*See, e.g.*, FAC ¶¶ 2, 29, 30, 47-48.) He quotes numerous contractual provisions to support this allegation. (FAC ¶¶ 14-17, 20-21, 23-26.) But he points to no *language* in any of those provisions that makes that equation.

The remittance owed to a Driver is the same amount as the "charge" actually imposed on a rider only in the event of a trip *cancellation*. In that event, Uber may charge a cancellation fee on the Driver's behalf. (FAC, Exh. 1, ¶ 4.5.) Such a fee, "(i)f charged," will be "deemed the Fare for the cancelled Transportation Services for the purpose of remittance to you [the Driver] hereunder." (Id.)

No other provision quoted or referenced in the FAC equates the amount actually charged to a rider with the amount to be remitted to the Driver, or deems the "Fare" to be the amount paid by the rider. (FAC, Exh. 1.) All of the other provisions Plaintiff quotes either do not address Driver remittances at all, or they reference the capitalized term "Fare" (which, again, is described as the amount "provided by the Fare Calculation" in paragraph 4.1.) (See quoted provisions in FAC ¶¶ 14-17, 20-21, 23-26.)

### E. **Uber's Alleged Extracontractual Representation About The Upfront Price Does Not Link The Upfront Price Charged To Riders With The "Fare" Owed To Drivers Under The Agreement.**

The Complaint alleges that Uber began assessing riders' charges "upfront," instead of at the completion of the trip, in or about "August-September 2016," but continued to base the payments made to Drivers on its "backend calculation." (FAC ¶¶ 27-30.) Plaintiff contends that the upfront price now charged to customers is "aggressively" determined, and results in a Fare that exceeds the fare amount produced by the calculation "previously done" at the "end of the ride." (FAC ¶ 27.) Plaintiff characterizes that higher "upfront" amount as "the Fare" that Uber collects "on Drivers' behalf, as their payment collection agent." (*Id.*, ¶ 27.)



COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

Plaintiff appears to base this conclusion (and similar conclusory allegations in the FAC) on a misreading of a statement to *riders* on Uber's website: that upfront pricing will allow them to "know the exact cost of your trip before requesting," and that "[t]his fare includes (but is not limited to) a base rate, rates for estimated time and distance of the route, and the current demand for rides in the area of the city where you're requesting a ride." (FAC ¶ 18.) That Uber would use the word "fare" when communicating with riders does not change the meaning of the defined "Fare" in the Agreement. And the rider-facing statement makes no mention of what if any amount (of the "fare" paid *by riders*) the *Driver* will receive *as his or her* "Fare" for the trip under the terms of the Agreement, nor does it say anything about Uber's collecting the rider's charge as a collection agent for the Driver. (*Id.*)

Indeed, the Agreement itself, which governs the relationship with Drivers, does not discuss upfront pricing, or any amounts Uber may itself charge riders, except to say generally that any promotional pricing does not change and cannot serve to increase the amount of the Driver's "Fare" under the Agreement. (FAC, Exh. 1, at ¶¶ 4.1, 4.7.)

Plaintiff quotes language in the Agreement that describes Uber as the Driver's "limited payment collection agent." (See FAC ¶¶ 17; 25, 26.) But he is selective in his reading. Paragraph 4.1 describes what payments Uber will "accept" for Drivers. (FAC, Exh. 1, at ¶ 4.1.) Uber will accept "the Fare" (which, again, is defined, in the same paragraph, as the "Fare provided by the Fare Calculation"), "applicable Tolls," and, depending on the region or if requested by the Driver, "applicable fees or fees" incurred by the Driver in connection with "the provision of Transportation Services." (*Id.*) The Agreement does not appoint Uber as Plaintiff's agent to collect or accept any other amounts Uber might charge the "User." Indeed, the only place that "additional" amounts are discussed is in paragraph 4.7, entitled "No Additional Amounts," in which Drivers disclaim any entitlement to additional amounts produced by Uber's own marketing or promotional efforts. (Exh. 1, at ¶ 4.5.)

### F. <u>None Of The Other Alleged Extracontractual Statements Equate The "Fare" Owed To Drivers With The Upfront Price</u>.

Plaintiff alleges that Uber made three other extra-contractual statements that support his



COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

conclusion that the Agreement requires Uber to pay Drivers a percentage of any higher "upfront" charge assessed to riders (rather than a percentage of the amount produced by the "old calculation" done "at the end of the ride."). (FAC ¶¶ 3, 29-30.) These other statements, though, acknowledge no such requirement, nor do they purport to modify the remittance obligation described in paragraph 4.1 of the Agreement.

Two of the alleged statements (see FAC ¶¶ 19, 34) were made before upfront pricing was "implemented." (FAC ¶¶ 19, 34.) Plaintiff alleges that Uber, "before the institution of upfront pricing," stated on its website that riders "are charged a fare at the end of the ride." (FAC ¶ 19.) Plaintiff also alleges that Uber made statements, in a July 2015 deposition, about how and what riders were charged and what payments Uber distributed to its "driver partners." That testimony does not address upfront pricing, or how a Driver's payments would be calculated if such pricing produced a higher charge than the "backend" calculation. (FAC ¶ 34.) Indeed, by Plaintiff's own allegations, upfront pricing had not yet been implemented. (See FAC ¶¶ 3, 27 (upfront pricing "implemented" in or around August-September 2016).) And neither of the quoted statements equates a rider's upfront charge with "the Fare" payable *to Drivers* for completed trips described in paragraph 4.1 of the Agreement.

A third statement, made in a brief filed by Uber in November 2016, described paragraph 4.1 of the Agreement as providing "that riders pay drivers a fare for each *completed* trip, and Uber charges drivers a percentage of the fare as a service fee for the use of the app." (FAC ¶ 35.) That statement likewise does not link the "fare" that riders "pay *drivers*" (and that Uber remits to them) for a "completed trip" with the upfront price or "fare" charged by Uber before the actual time or distance of the trip is known. (*Id.*)

## ARGUMENT

### I. DISMISSAL IS PROPER WHERE THE COMPLAINT FAILS TO PRESENT A COGNIZABLE LEGAL THEORY OR FACTS SUFFICIENT TO STATE A CLAIM.

Dismissal of a complaint pursuant to Rule 12(b)(6) "is proper where there is either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal claim." *Hinds Inv., L.P. v. Angioli*, 654 F.3d 846, 850 (9th Cir. 2011). "While a complaint

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and punctuation omitted). Conclusory allegations are not assumed to be true and they should be disregarded. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).

To survive a motion to dismiss, the factual, non-conclusory allegations must be sufficient to state a claim for relief that is "plausible" on its face. *Iqbal*, 556 U.S. at 681. A plausible claim requires "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

Breach of contract allegations are implausible when they are unsupported by the terms of the agreement upon which they rest. *Johnson v. Fed. Home Loan Mortg. Corp.*, 793 F.3d 1005, 1008 (9th Cir. 2015). A court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1096 (9th Cir. 2004). Claims must be dismissed when plaintiff's allegations are either contradicted or unsupported by the express terms of the contracts or other documents referred to in the complaint. *Id.* at 1100; *Johnson*, 793 F.3d at 1006; *Tritz v. U.S. Postal Serv.*, 721 F.3d 1133, 1140 (9th Cir. 2013); *Zepeda v. PayPal, Inc.*, 777 F.Supp.2d 1215, 1219-20 (N.D. Cal. 2011); *Parrish v. Nat'l Football League Players Ass'n*, 534 F.Supp.2d 1081, 1097 (N.D. Cal. 2007).

## II. THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT.

Plaintiff's contention – that he is entitled to a percentage of the "upfront price" charged to riders, rather than a percentage of the Fare produced by the Fare Calculation – fails to state a claim for breach of contract because the text of the contract is to the contrary. The Agreement provides that Uber will remit to the Driver a percentage of the Fare produced by the Fare Calculation, and "only" that amount. (FAC, Exh. 1, ¶ 4.1) It does not provide – indeed, it disclaims – any obligation to remit any greater or different "fare" amounts to Drivers.

The "upfront price" or "fare" set before the ride is just such a greater or different amount,

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

as the FAC admits, and the calculation that produces it is not the Fare Calculation that produces "the Fare" owed to Drivers described in the Agreement. (Compare FAC ¶ 18 with description of "Fare Calculation" in FAC, Exh. 1, ¶ 4.1.) The Fare Calculation is a base amount plus amounts produced by the applicable rates for distance and time. (FAC, Exh. 1, ¶ 4.1.) The Fare produced by the Fare Calculation does not include the separate booking fee. (FAC ¶¶ 29, 20.) The upfront price or rider "fare" on the website was expressly not "limited to" the factors in the Fare Calculation. (FAC ¶ 18.) According to the Complaint, it includes "current demand," Uber's booking fee, and the tolls, fees, and surcharges due to Drivers. (*Id.*) And it is not limited to those things, while the Fare Calculation described in the Agreement is limited to the sum of up to only three, named components. (*Id.*) Plaintiff's contention that he is entitled to a percentage of the upfront price is not consistent with either the Agreement or his own allegations.

**A. The Construction of the Agreement is Governed by California Law, Which Requires Adherence to Its Plain Language and Respect for Its Defined Terms.**

The interpretation of the Agreement is governed by California law (FAC, Exh. 1, ¶ 15.1), and is a matter of law for the court to decide. *FiTeq Inc. v. Venture Corp.*, 169 F.Supp.3d 948, 955 (N.D. Cal. 2016).

The Court's interpretation must "give effect to the mutual intention of the parties," as it existed at the time the contract was formed. Cal. Civ. Code § 1636; *TRB Inv., Inc. v. Fireman's Fund Ins. Co.*, 40 Cal.4th 19, 27 (Cal. 2006). "The intention of the parties is to be ascertained from the writing alone, if possible." Cal. Civ. Code § 1639.

"The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Cal. Civ. Code § 1638; *Marder v. Lopez*, 450 F.3d 445, 449 (9th Cir. 2006); *Lewis v. YouTube, LLC*, 244 Cal.App.4th 118, 125 (Cal. App. 2015).

Any special meaning given to a term by the parties prevails over its ordinary or popular meaning. Cal. Civ. Code § 1644. Courts are not in the business of disregarding the actual language parties use in their contract, including the definitions the parties have assigned to the specific terms used in them. *See Rosen v. State Farm Gen. Ins. Co.*, 30 Cal.4th 1070, 1073-80 (Cal. 2003); *Grebow v. Mercury Ins. Co.*, 241 Cal.App.4th 564, 573-74 (Cal. App. 2015), as

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

modified on denial of reh'g (Oct. 26, 2015).

Just as courts do not disregard the parties' intent to use a term in a special, defined way, they do not re-write a clear and unambiguous agreement by *adding* a special definition, or any other term, that the agreement itself does not supply. *Rosen*, 30 Cal.4th at 1073-80; *Baldwin v. AAA N. California, Nevada & Utah Ins. Exch.*, 1 Cal.App.5th 545, 555 (Ct. App. 2016), as modified (July 13, 2016); *see also S. California Counseling Ctr. v. Great Am. Ins. Co.*, 162 F.Supp.3d 1045, 1052-53 (C.D. Cal. 2014).

Because each of Plaintiff's claims is predicated on an interpretation of the Agreement that the text does not support, the Complaint should be dismissed. *Johnson*, 793 F.3d at 1006; *Zepeda*, 777 F.Supp.2d at 1219-20; *Herskowitz v. Apple, Inc.*, 940 F.Supp.2d 1131, 1141 (N.D. Cal. 2013).

**B. Uber Never Promised to Remit to Drivers a Percentage of The Total Amount Paid by Riders.**

The Agreement does not entitle Drivers to a percentage of the total amount riders are actually charged. To the contrary, it says that the Fare payable to Drivers is the product of a calculation, and that the "Fare is calculated based upon a base fare amount plus distance . . . and/or time amounts, as detailed at www.uber.com/cities for the applicable Territory ('Fare Calculation')." (FAC, Exh. 1, ¶ 4.1.)

Nor does the Agreement tie a Driver's remittance to the amount of the rider's actual payment. Plaintiff asserts that the "Fare" earned by the Driver must be based on the amount paid by the rider (or "collected" from the rider). (*See, e.g.*, FAC ¶¶ 2, 4, 27-30.) But that conclusion is untethered to – indeed, is contrary to – the language of the Agreement itself.

**C. Plaintiff's Interpretation of Uber's Duties Is Contrary to the Text of the Agreement.**

The contention that Drivers are entitled to an amount *greater* than the Fare Calculation is contrary to the express provisions of the Agreement. Plaintiff agreed that his remittance would be based *solely* on the Fare Calculation, unless the trip is cancelled (and the cancellation fee is thus deemed to be "the Fare"). (FAC, Exh. 1, ¶¶ 4.1, 4.7.) And he expressly disclaimed any right to any "additional monetary amounts" generated by Uber's own promotional activities. (*Id.* at ¶ 4.7.) These acknowledgements foreclose any claim that Uber is contractually obligated to pay Drivers

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

an amount greater than the Fare Calculation, including any additional amounts generated as a result of upfront pricing. *See, e.g.*, *Stanford Univ. Hosp. v. Fed. Ins. Co.*, 174 F.3d 1077, 1086-87 (9th Cir. 1999); *Darnaa, LLC v. Google Inc.*, No. C 15-03221 WHA, 2017 WL 679404, at *8 (N.D. Cal. Feb. 21, 2017); *Lewis*, 244 Cal.App.4th at 126.

### D. Plaintiff's Interpretation of the Term "Fare" Is Contrary to the Definition in the Contract.

The Agreement defines the term “Fare” to be the amount "you [the Driver] are entitled to charge . . . for each instance of completed Transportation Services provided to a User that are obtained via the Uber Services ('Fare'), where such Fare is calculated based upon the base fare amount plus distance . . . and/or time." (FAC, Exh. 1, ¶ 4.1.) The calculation described in paragraph 4.1 is the "Fare Calculation." (*Id.*) The Fare generated by that calculation is the *only* payment the Driver is entitled to receive for providing transportation services. (*Id.*) Plaintiff nonetheless claims that the higher upfront *price* that riders now pay is "*the Fare*" upon which his payments must be based. (FAC ¶ 52.) That characterization has no legal weight. The words of the contract control. *See* Cal. Civ. Code § 1644; *Grebow*, 241 Cal.App.4th at 571-74, as modified on denial of reh'g (Oct. 26, 2015); *see also Rosen*, 30 Cal.4th at 1073-80.

The "Fare," as defined in the Agreement, is *not* the amount that riders are "charged" or the total "price" they pay. The "Fare" is the product of the time/distance/base amount calculation accessible through the link to Uber's website, as described in paragraph 4.1 of the Agreement (unless a rider cancels a requested trip). (Exh. 1 ¶¶ 4.1, 4.5.) It is based on the actual "completed trip." The upfront price, in contrast, is not produced by the Fare Calculation, and so cannot be "the Fare." The upfront price is the product of a different calculation, one that includes (but is not limited to) *estimates* of the length and time required for the ride, assessments of the current "demand" for rides in the locality (a factor not mentioned in the Agreement), tolls, charges, and Uber's booking fee. (FAC, ¶ 18; FAC, Exh. 1, ¶4.1; FAC, Exh. 2.) Plaintiff's conclusory assertion that the upfront price or charge is the same as the "Fare" is irreconcilable with the Agreement's actual terms.

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

### E. Plaintiff's References To Uber's Role As His Collection Agent Do Not Support Plaintiff's Claim That Uber Has Breached The Agreement.

Plaintiff seizes on Uber's role as his "collection agent," and it is true that Uber acts as a "limited payment collections agent." (FAC, Exh. 1, ¶ 4.1.) But that fact adds no weight or substance to the claim. The Agreement sets forth the limited categories of things Uber will "accept" on behalf of the Driver: "the Fare" (that is, the amount produced by the Fare Calculation as described in the Agreement), tolls, and other fees the Driver incurs in the provision of the service to the rider. (*Id.*)

Plaintiff does not allege that Uber has failed to remit any of those amounts. Rather, his claim is, again, that the upfront price constitutes "the Fare," which Uber collects for him. (FAC, ¶¶ 27, 29-30,52.) It isn't, and the Agreement cannot be read to suggest that it is.

### F. Uber's Extra-Contractual Statements About Rider Fares And Other Matters Do Not Support Plaintiff's Claim That Uber Has Breached The Agreement.

Plaintiff alleges that Uber has made statements that support his interpretation of the Agreement. (FAC ¶ 49.) They don't, nor are such extra-contractual statements relevant.[2] The contract's meaning is derived from its words, where possible, not by what one party says about it, outside of the contract. Cal. Civ. Code §§ 1638-1639; *Marder*, 450 F.3d at 449.

Two of the alleged extra-contractual statements were made before upfront pricing was implemented. They describe what Uber was doing *then*, when both the rider's payment and the Driver's Fare were determined at the end of the ride. (FAC ¶¶ 19, 34.) They neither state nor imply that Drivers will be owed more than the amount produced by the Fare Calculation if the rider is charged an upfront price that exceeds that amount.

The third statement, allegedly made in November 2016, is simply an accurate paraphrase of certain terms of the Agreement. (FAC ¶ 35.) It provides no support for Plaintiff's contention that his remittance must now be based on the upfront price, rather than on the Fare as determined

[2] Plaintiff's sole claim is for breach of contract. He does not assert any claim based on extra-contractual representations, nor does he say that he saw or relied on any of the representations cited in the First Amended Complaint.



COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

by the Fare Calculation at the "backend" of the ride. And it does not describe (or mention) the Fare Calculation at all. (*Id.*)

The final statement, about upfront pricing, is a promotional statement addressed to riders who use the service, not to Drivers. (FAC ¶ 18.) It does not discuss what portion of the upfront price will be paid to Drivers, and it describes some components for calculating the upfront price or "fare" that differ from the Fare Calculation that produces the Fare found in the Agreement. (*Id.*)

**CONCLUSION**

Plaintiff's claims rest on a misreading of the Agreement. The contract itself is before this Court, and its written terms provide no support for Plaintiff's contentions. Adopting Plaintiff's interpretation would alter the bargain that the parties actually made. The First Amended Complaint should be dismissed without leave to replead.

DATED: June 19, 2017

COBLENTZ PATCH DUFFY & BASS LLP

By: /s/ *Jonathan R. Bass*

Jonathan R. Bass
Susan K. Jamison
Clifford E. Yin
Sean P.J. Coyle
Attorneys for Defendants
UBER TECHNOLOGIES, INC., and RASIER, LLC

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663