Paul B. Maslo (admitted *pro hac*)
Andrew J. Dressel (admitted *pro hac*)
NAPOLI SHKOLNIK PLLC
360 Lexington Avenue, 11th Floor
New York, New York 10017
Telephone: (212) 397-1000
Fax: (646) 843-7603
Email: pmaslo@napolilaw.com
        adressel@napolilaw.com

*Counsel for Martin Dulberg*

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN DULBERG, individually, and on behalf of all others similarly-situated, | Case No. 3:17-cv-00850-WHA |
| Plaintiff, | **MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL** |
| v. | Judge: The Honorable William H. Alsup |
| UBER TECHNOLOGIES, INC., and RASIER, LLC, | Date: February 8, 2018 Time: 8:00 a.m. Courtroom: 8 |
| Defendants. | Trial Date: October 29, 2018 |

1

## NOTICE OF MOTION AND MEMORANDUM OF LAW

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3    PLEASE TAKE NOTICE that on February 8, 2018, at 8:00 a.m., or as soon thereafter as the

4 matter may be heard, in Courtroom 8 of the San Francisco Courthouse for the Northern District of

5 California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Martin Dulberg will move

6 the Court for an order granting his motion for class certification and appointment of Napoli

7 Shkolnik PLLC as class counsel pursuant to Federal Rule of Civil Procedure 23. Dulberg's motion is

8 based on the accompanying memorandum of law and related documents, as well as all the pleadings,

9 records, and files in this action.

10   Dated: December 21, 2017

11                                                        Respectfully submitted,

12                                                        */s/ Paul B. Maslo*
                                                         Paul B. Maslo (admitted *pro hac*)
13                                                        Andrew J. Dressel (admitted *pro hac*)
                                                         NAPOLI SHKOLNIK PLLC
14                                                        360 Lexington Avenue, 11th Floor
                                                         New York, New York 10017
15                                                        Telephone: (212) 397-1000
                                                         Fax: (646) 843-7603
16                                                        Email: pmaslo@napolilaw.com
                                                                  adressel@napolilaw.com
17

18                                                        *Counsel for Martin Dulberg*

19

20

21

22

23

24

25

26

27

28

1

**<u>TABLE OF CONTENTS</u>**

PRELIMINARY STATEMENT ............................................................................................... 1

ISSUES................................................................................................................................... 2

STATEMENT OF FACTS ...................................................................................................... 2

    I.    Uber changed the way it paid drivers when it implemented upfront pricing............................. 2

    II.   This dispute hinges on the interpretation of a form agreement that Uber drafted.................... 4

    III.  The class is numerous and identifiable .................................................................................. 5

    IV.  Dulberg has diligently and vigorously prosecuted this case.................................................. 5

    V.    Napoli Shkolnik has ample experience and resources......................................................... 6

STANDARD............................................................................................................................ 6

ARGUMENT .......................................................................................................................... 7

    I.    The Court should redefine the class...................................................................................... 7

    II.   The proposed class is sufficiently numerous ........................................................................ 8

    III.  The proposed class has sufficient commonality because its members have the same
         relation to a form agreement, the breach of which is the core issue in this case ...................... 8

    IV.  Dulberg's claim is typical of the class because all members are bound to the same form
         agreement and allege the same wrongful conduct .............................................................. 9

    V.    Dulberg and Napoli Shkolnik are adequate class representatives because they have no
         conflicts with the class and are vigorously prosecuting this case................................................ 10

    VI.  Common issues predominate because this case turns on the interpretation of a form
         agreement .......................................................................................................................... 10

    VII. Damages are calculable from the ride data that Uber provided ................................................ 12

    VIII. A class action is superior to other methods for adjudicating this case .................................... 13

    IX. The proposed class is ascertainable because its members can be objectively determined
         based on the records that Uber produced............................................................................. 14

    X. The Court should appoint Napoli Shkolnik as class counsel............................................... 15

CONCLUSION ...................................................................................................................... 16

## TABLE OF AUTHORITIES

**Cases**

*Abdeljalil v. Gen. Elec. Capital Corp.*,
  306 F.R.D. 303 (S.D. Cal. 2015) .........................................................................7, 8, 15

*Armstrong v. Davis*,
  275 F.3d 849 (9th Cir. 2001) ....................................................................................... 7

*Astlana v. Kashi Co.*,
  291 F.R.D. 493 (S.D. Cal. 2013) ..........................................................................12, 13

*Chastain v. Union Sec. Life Ins. Co.*,
  No. 06-cv-5885-ABC-FFMX, 2008 WL 11333691 (C.D. Cal. May 6, 2008).....................9, 13, 14

*Comcast Corp. v. Behrend*,
  133 S. Ct. 1426 (2013) .............................................................................................. 12

*Cryer v. Franklin Templeton Res., Inc.*,
  No. 16-cv-4265-CW, 2017 WL 4023149 (N.D. Cal. July 26, 2017) ................................. 7

*Davidson v. Kimberly-Clark Corp.*,
  873 F.3d 1103 (9th Cir. 2017) ..................................................................................... 7

*Ellsworth v. U.S. Bank, N.A.*,
  No. 12-cv-02506-LB, 2014 WL 2734953 (N.D. Cal. June 13, 2014) ...............9, 10, 11, 13, 14, 15

*Estakhrian v. Obenstine*,
  320 F.R.D. 63 (C.D. Cal. 2017)................................................................................... 12

*Ewert v. eBay, Inc.*,
  No. 07-cv-02198-RMW, 2010 WL 4269259 (N.D. Cal. Oct. 25, 2010) .................................11, 14

*Hofstetter v. Chase Home Fin., LLC*,
  No. 10-cv-01313-WHA, 2011 WL 1225900 (N.D. Cal. Mar. 31, 2011)...........6, 7, 8, 9, 10, 14, 15

*In re Med. Capital Sec. Litig.*,
  No. 09-cv-1048-DOC, 2011 WL 5067208 (C.D. Cal. July 26, 2011)................................. 11

*Leyva v. Medline Indus. Inc.*,
  716 F.3d 510 (9th Cir. 2013) ..................................................................................... 12

*Rodman v. Safeway, Inc.*,
  No. 11-cv-03003-JST, 2014 WL 988992 (N.D. Cal. Mar. 10, 2014),
  *aff'd*, 694 F. App'x 612 (9th Cir. 2017) .........................................................7, 8, 9, 10, 11, 12, 14, 15

*Rosales v. El Rancho Farms*,
   No. 09-cv-00707-AWI-JLT, 2014 WL 321159 (E.D. Cal. Jan. 29, 2014) ................................... 12

*Sateriale v. RJ Reynolds Tobacco Co.*,
  No. 09-cv-08394-CAS(SSx), 2014 WL 7338877 (C.D. Cal. Dec. 19, 2014).................................. 12

*Vedachalam v. Tata Consulting Setvices, Ltd.*,
  No. 06-cv-0963-CW, 2012 WL 1110004 (N.D. Cal. Apr.2, 2012) .....................8, 9, 10, 11, 14, 16

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
  594 F.3d 1087 (9th Cir. 2010) .................................................................................... 12

*Zinser v. Accufix Research Inst., Inc.*,
   253 F.3d 1180 (9th Cir. 2001) .......................................................................................... 14

**Rules**

Rule 23 ...............................................................................................................6, 7, 14

Rule 23(a) .................................................................................................................. 6

Rule 23(a)(2) .............................................................................................................. 8

Rule 23(a)(3) .............................................................................................................. 9

Rule 23(a)(4) ............................................................................................................. 10

Rule 23(b) .................................................................................................................. 6

Rule 23(b)(3) ..................................................................................................6, 7, 10, 13

Rule 23(g)(1) ............................................................................................................. 15

Martin Dulberg submits this memorandum of law in support of his motion for class certification and appointment of Napoli Shkolnik PLLC as class counsel pursuant to Federal Rule of Civil Procedure 23.

## PRELIMINARY STATEMENT

This case involves the interpretation of the December 11, 2015 Technology Services Agreement (the "TSA"), a form contract of adhesion that Uber[1] drafted. All class members are bound to the TSA and the only substantive issue in this case is whether Uber breached the TSA when, after implementing upfront pricing, it paid drivers based on a different fare than the one it collected from passengers. Because this case involves the alleged breach of a form agreement, it is tailor-made for class certification. Notably, courts in this district have held time and time again that claims arising from the interpretation of a form contract present the ideal case for class treatment and they routinely certify such cases. The result should be the same here.

Indeed, Dulberg easily satisfies the requirements for certification:

- With 9,197 members, the proposed class is sufficiently numerous.
- Because Dulberg and the other class members are bound to the TSA, a form contract, and the interpretation of the TSA is the main issue in this case, Dulberg also clears the commonality, typicality, and predominance hurdles. Moreover, damages are readily calculable from a spreadsheet that Uber produced.
- Dulberg and Napoli Shkolnik are adequate class representatives because they have no conflicts of interest with the class and are vigorously prosecuting this case.
- There is no doubt that utilizing the class action mechanism is superior to other methods for adjudicating class members' claims because none of them has sufficient damages to bring his own action.
- This case is manageable as a class action because the singular focus will be on whether Uber breached the TSA, a form agreement that binds all class members.
- The proposed class is ascertainable because its members can be objectively identified from the records that Uber produced.

In addition to certifying the class, the Court should appoint Napoli Shkolnik as class counsel. The firm has extensive resources, aggressively prosecuted this case, and ample experience running class actions.

---

[1] "Uber" includes Uber Technologies, Inc. and Rasier, LLC.

1

Finally, the Court should narrow the class definition, so that it includes only individuals, like Dulberg, who drove for UberX and Uber Select.

## ISSUES

Should the Court (1) certify this case because, as numerous courts in this district have held, claims arising from the interpretation of a form contract are ideal for treatment as a class action; and (2) appoint Napoli Shkolnik, a firm with ample experience and resources, as class counsel? Under well-established law, the answer to both questions is "yes."

## STATEMENT OF FACTS

### I. Uber changed the way it paid drivers when it implemented upfront pricing.

Dulberg has been an UberX driver since May 2014 and an Uber Select driver since February 2015. (First Amended Complaint ("FAC") ¶ 13.) Like all class members, he is currently bound by the TSA. (*Id.*, Ex. 1.) The TSA has a California choice-of-law clause and a forum-selection clause designating San Francisco. (*Id.* § 15.1.)

Class members did not negotiate the terms of the TSA, which Uber drafted in its entirety. (*See, e.g.*, Uber's Responses and Objections to Plaintiff's First Set of Interrogatories ("Uber's R&Os to Rogs"), attached as Ex. 1 to the Declaration of Paul B. Maslo, at 10 ("The [TSA] was prepared by Uber[.]"); Uber's Responses and Objections to Plaintiff's Amended First Set of Document Requests ("Uber's R&Os to RFPs"), attached as Ex. 2 to the Maslo Declaration, at 27 ("The TSA was prepared by or at the direction of counsel and therefore it, along with documents and communications generated during the drafting process, are privileged.").) Class members were merely allowed to opt out of arbitration, which they all did. (*See, e.g.*, Uber's R&Os to Rogs at 10 ("Drivers like Mr. Dulberg, and every member of the putative class, also expressly could (and did) reject certain core provisions of the TSA, namely the arbitration provisions[.]").) If class members wanted to work, they had no choice but to agree to the TSA. (*See, e.g.*, TSA, Preamble ("In order to use the Uber Services, you *must* agree to the terms and conditions that are set forth below.") (emphasis added).)

Uber "is a technology services provider that does not provide transportation services." (*Id.*) Instead, it "provides lead generation to independent providers of rideshare or peer-to-peer . . .

2

passenger transportation services using the Uber Services." (*Id.*) Class members "enter[ed] into [the TSA] for the purpose of accessing and using the Uber Services." (*Id.*)

The "Uber Services" include "Uber's on-demand lead generation and related services . . . that enable transportation providers to seek, receive and fulfill on-demand requests for transportation services by Users seeking transportation services; such Uber Services include access to the Driver App and Uber's software, websites, payment services . . ., and related support services systems[.]" (*Id.* § 1.13.)

In other words, Uber is class members' service provider. In return, they pay Uber a Service Fee from the Fares they charges passengers. Specifically, class members are "entitled to charge a fare for each instance of completed Transportation Services provided to a User [*i.e.*, passenger] that [is] obtained via the Uber Services ('Fare'), where such Fare is calculated based upon a base fare amount plus distance . . . and/or time amounts . . . ('Fare Calculation')." (*Id.* § 4.1.)

Class members "appoint[ed] [Uber] as [their] limited payment collection agent solely for the purpose of accepting the Fare, applicable Tolls and, depending on the region and/or if requested by [them], applicable taxes and fees from the User on [their] behalf via the payment processing functionality facilitated by the Uber Services[.]" (*Id.*) Uber also charges a "Booking Fee for every trip," which it collects on class members' behalf. (FAC, Ex. 2 (Service Fee Addendum).)

The TSA requires Uber "to remit, or cause to be remitted, to [class members] on at least a weekly basis: (a) the Fare less the applicable Service Fee; (b) the Tolls; and (c) depending on the region, certain taxes and ancillary fees." (TSA § 4.1.) The Service Fee is paid "on a per Transportation Services transaction basis calculated as a percentage of the Fare determined by the Fare Calculation." (*Id.* § 4.4.) As an example, the Service Fee is 20% on Dulberg's UberX rides and 28% on his Uber Select rides. (Service Fee Addendum.)

From the time Uber disseminated the TSA in December 2015 until it implemented upfront pricing, Uber performed one Fare Calculation based on actual inputs for time/distance at the end of each UberX and Uber Select ride:

> When a rider takes a trip with you, they are charged a Fare at the end of the ride. Each Fare is calculated based on how far and how long the trip took to complete. Fares are calculated by

adding a base fare (if applicable) + time and distance rates. Riders are also charged a booking fee (approx $1-2) . . . Drivers using the partner app are charged an Uber Fee [*i.e.*, Service Fee] as a percentage of each trip fare.

(FAC ¶ 19. *See also id.* ¶ 3.) Passengers paid that Fare, Uber calculated its Service Fee based on that Fare, and class members received the remainder of that Fare.

When Uber implemented upfront pricing, its practices changed. It began doing two separate Fare calculations, one upfront to charge passengers (with estimated inputs for time/distance) and another after the ride (with actual inputs for time/distance) to determine class members' compensation:

After Uber implemented upfront pricing, the calculations of rider payments and drivers' Fares under the [TSA] were generally the same as before Uber implemented upfront pricing, except that the rider's payment (including time and distance variables) is *estimated* at the start of the trip rather than based on *actual* time and distance data determined at the end of the trip.

(Uber's R&Os to Rogs at 8 (noting that Uber "[s]eparat[ed] rider payments from driver Fares" under upfront pricing) (second emphasis in original). *See also id.* at 9 ("Accordingly, after upfront pricing, rider payments are typically based on *estimated* time and distance, whereas driver payments are based on *actual* time and distance.") (emphasis in original; bold removed).)

The Fare that Uber calculates based on actual values is generally smaller than the upfront Fare that passengers pay. (FAC ¶ 29.) Uber pays class members based on this lower amount and pockets the difference. (*Id.*)

**II. This dispute hinges on the interpretation of a form agreement that Uber drafted.**

There is one core issue in this case: whether Uber's practice of paying class members based on a separate Fare from the one it collected from passengers breached the TSA. (*See, e.g.*, FAC ¶ 39 ("There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members, including . . . [w]hether, under California law, which applies to all drivers pursuant to the [TSA]'s choice-of-law clause, Uber breached the [TSA], the terms of which apply to all drivers[.]"); Uber's R&Os to RFPs at 4 (noting as an objection that "the discrete dispute" in this case is "over the contractual interpretation of the driver 'fare' as defined by the [TSA]"); *id.* at 27 (contending that other sections of the TSA "are not relevant to the discrete contractual dispute in this case over how the driver Fare as defined in the TSA is calculated[.]").)

**III. The class is numerous and identifiable.**

The class is currently defined as "[a]ll natural persons nationwide who have worked or who continue to work as a driver for Uber during the time period it instituted the billing practice described in this complaint and who opted out of arbitration." (FAC ¶ 36.) Under this definition the class would include drivers for UberX, Uber XL, Uber Select, Uber Pool, Uber Black, and Uber SUV. But Dulberg drove for only UberX and Uber Select. (*Id.* ¶ 13.) In addition, according to Uber, the TSA does not apply to Uber Black and Uber SUV. (*See, e.g.*, Uber's R&Os to Rogs at 3.)

Because Dulberg did not utilize the other services, he seeks to amend the class definition to include the following: "All natural persons nationwide who (1) worked as a driver for UberX or Uber Select; (2) opted out of arbitration; and (3) transported a passenger who was charged an upfront fare before they accepted Uber's updated fee addendum, which it issued on May 22, 2017."[2]

There are 9,197 drivers in the class. (Declaration of Andrew J. Dressel ¶ 5, Ex. B.) Uber provided an Excel spreadsheet that has ride-by-ride data over the relevant period for all drivers who opted out of arbitration, which makes identifying class members an easy process. (*Id.*)

**IV. Dulberg has diligently and vigorously prosecuted this case.**

Before deciding to file suit, Dulberg did research on the internet regarding Uber's upfront pricing. (Dulberg Declaration ¶ 2.) He also discussed the issue with his passengers and uncovered a consistent pattern of Uber collecting a higher Fare from passengers than the Fare that he was paid on. (*Id.* ¶ 3.) After complaining to Uber about the issue and getting nowhere, Dulberg decided to take legal action. (*Id.*) He interviewed multiple firms and engaged Napoli Shkolnik. (*Id.*) Dulberg has played an important role throughout this litigation. (*Id.* ¶ 4.) For example, he provided factual background for, reviewed, and edited the complaint. (*Id.*) He has been active in discovery, working with Napoli Shkolnik to provide answers to interrogatories and collect and produce documents. (*Id.*)

---

[2] Uber's new fee addendum is attached as Exhibit 3 to the Maslo Declaration. In the addendum, the Fare that class members are paid on is calculated with "*actual* distance and/or time amounts." (May 22 Addendum § 4.1 (emphasis added).) By comparison, the TSA does not specify whether the Fare calculation includes "actual" or "estimated" amounts, and thus, its plain language covers the upfront Fare. Moreover, the new fee addendum does not use Service Fee percentages. Instead, "Service Fee equals the Rider Payment minus: (a) the Fare; (b) Tolls; (c) any other fees retained by us (*e.g.*, booking fee); and (d) applicable taxes and surcharges." (*Id.* § 4.4.)

He will be deposed on January 4. (*Id.*) Dulberg has pledged to "continue to do everything that [he] can to prosecute this case on behalf of [him]self and the class that [he] represent[s]." (*Id.* ¶ 5.) Dulberg has no conflicts of interest with the other class members. (*Id.* ¶ 6. *See also* FAC ¶ 41 ("Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests adverse to the Class. At all relevant times, Plaintiff and Class members are and have been similarly situated[.]").

## V.  Napoli Shkolnik has ample experience and resources.

Napoli Shkolnik is a nationally-recognized firm that specializes in class action, mass tort, and commercial litigation. (Maslo Declaration ¶¶ 2-3.) It has achieved tremendous financial success, recovering well over $2 billion on behalf of its clients. (*Id.* ¶ 4.) The attorneys on this case have good credentials and relevant experience. (*Id.* ¶¶ 5-11.) Napoli Shkolnik has vigorously litigated this case, is familiar with the law governing this case, and will continue to devote its extensive financial and human resources to this case. (*Id.* ¶¶ 12-14. *See also* FAC ¶ 44 ("The representative and his chosen attorneys are familiar with the subject matter of the lawsuit and have full knowledge of the allegations contained in this complaint so as to be able to assist in its prosecution. In addition, the representative's attorneys are competent in the relevant areas of the law and have sufficient experience to vigorously represent the Class. Furthermore, the resources available to counsel ensure that the litigation will not be hampered by a lack of financial capacity. Plaintiff's attorneys have sufficient financial resources and are willing to absorb the costs of the litigation.").)

## STANDARD

"The party seeking class certification bears the burden of showing that each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) are met." *Hofstetter v. Chase Home Fin., LLC*, No. 10-cv-01313-WHA, 2011 WL 1225900, at *6 (N.D. Cal. Mar. 31, 2011) (Alsup, J.). "Rule 23 requires a court granting class certification to find (1) numerosity of the class; (2) commonality of legal or factual questions; (3) typicality of the named plaintiffs' claims and defenses; and (4) adequacy of the named plaintiffs to protect the interests of the class." *Id.* "Certification under Rule 23(b)(3) requires the additional findings 'that the questions of law or fact common to class

members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Id.* "In addition to the explicit requirements of Rule 23, an implied prerequisite to class certification is that the class must be sufficiently definite." *Id.* at *12.

"In adjudicating a motion for class certification, the allegations in the complaint are accepted as true so long as those allegations are sufficiently specific to permit an informed assessment as to whether the requirements of Rule 23 have been satisfied." *Id.* at *6. *See also Cryer v. Franklin Templeton Res., Inc.*, No. 16-cv-4265-CW, 2017 WL 4023149, at *1 (N.D. Cal. July 26, 2017) ("In general, the court must take the substantive allegations of the complaint as true [on a motion for class certification].").

"California recognizes the objective theory of contracts, under which it is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation [and] the parties' undisclosed intent or understanding is irrelevant to contract interpretation." *Rodman v. Safeway, Inc.*, No. 11-cv-03003-JST, 2014 WL 988992, at *7 (N.D. Cal. Mar. 10, 2014), *aff'd*, 694 F. App'x 612 (9th Cir. 2017) (quotation marks and text alterations omitted). "It is for this reason that, when viewed in light of Rule 23, *claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such.*" *Id.* (emphasis added; quotation marks and text alteration omitted).

## ARGUMENT

### I. The Court should redefine the class.

"Where appropriate, the district court may redefine the class[.]" *Armstrong v. Davis*, 275 F.3d 849, 871 n.28 (9th Cir. 2001), *abrogated on other grounds*, *Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103 (9th Cir. 2017). Because Dulberg only drove for UberX and Uber Select, he seeks to narrow the class definition to include the following: "All natural persons nationwide who (1) worked as a driver for UberX or Uber Select; (2) opted out of arbitration; and (3) transported a passenger who was charged an upfront fare before they accepted Uber's updated fee addendum, which it issued on May 22, 2017." The Court should grant his request. *See, e.g.*, *Abdeljalil v. Gen. Elec. Capital Corp.*, 306 F.R.D.

303, 306 (S.D. Cal. 2015) ("A review of the record reflects that the class definition presented in the TAC is clearly broader than the class definition plaintiff seeks to certify. Although defendant characterizes the two definitions as very different classes, this Court agrees with plaintiff that the new definition is simply a narrower version of the class definition presented in the TAC, which is allowable.") (quotation marks and citation omitted); *Hofstetter*, 2011 WL 1225900, at *12 (Alsup, J.) (narrowing class definition on motion for class certification).

## II. The proposed class is sufficiently numerous.

There are 9,197 drivers in the class, which satisfies the numerosity requirement. *See, e.g.*, *Rodman*, 2014 WL 988992, at *17 ("[C]ourts generally find that the numerosity factor is satisfied if the class comprises 40 or more members.") (quotation marks omitted; text alteration in original).

## III. The proposed class has sufficient commonality because its members have the same relation to a form agreement, the breach of which is the core issue in this case.

"For purposes of Rule 23(a)(2) even a single common question will do." *Id.* at *4 (quotation marks and text alterations omitted). "Where questions common to class members present significant issues that can be resolved in a single adjudication there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id.* (quotation marks omitted). Courts routinely find that the commonality requirement is satisfied where the interpretation of a form agreement is at issue.

For example, *Vedachalam v. Tata Consultancy Services, Ltd.* involved "form contract[s] drafted by [d]efendants," which were "identical in regards to almost every material term[.]" No. 06-cv-0963-CW, 2012 WL 1110004, at *9 (N.D. Cal. Apr. 2, 2012). Because defendants drafted the agreements, the court found that, "[e]ven if [d]efendants could establish some ambiguity with extrinsic evidence, the ambiguous contract terms would be interpreted against them, as the drafters of the form contract[s]." *Id.* Moreover, the court opined that "when there is a form contract of adhesion at issue, . . . the agreement is interpreted whenever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing." *Id.* (quotation

8

marks omitted). Accordingly, the court held that "[p]laintiffs have satisfied their burden to meet the commonality requirement" because "a class-wide proceeding will generate common answers regarding whether Defendants engaged in practices that violated the parties' agreements[.]" *Id.* at *9-10. *See also Rodman*, 2014 WL 988992, at *7 ("[C]laims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such.") (quotation marks omitted); *Chastain v. Union Sec. Life Ins. Co.*, No. 06-cv-5885-ABC-FFMX, 2008 WL 11333691, at *3-4 (C.D. Cal. May 6, 2008) ("*Courts often certify class actions involving form contracts . . . .* Plaintiff's proposed class shares these same issues: interpretation of a standard contract and common practices in applying the contract terms.") (emphasis added).

Here, as explained above, the entire case hinges on the interpretation of the TSA, an adhesive form agreement that Uber drafted. For that reason, Dulberg easily satisfies the commonality requirement.

## IV. Dulberg's claim is typical of the class because all members are bound to the same form agreement and allege the same wrongful conduct.

"The typicality requirement of Rule 23(a)(3) is satisfied when the claims or defenses of the representative parties are typical of the claims or defenses of the class." *Hofstetter*, 2011 WL 1225900, at *9 (Alsup, J.) (quotation marks omitted). "A plaintiff's claims are typical if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Id.* (quotation marks omitted). Dulberg clears the typicality hurdle because his and other class members' breach-of-contract claims *are* identical. *See, e.g.*, *Ellsworth v. U.S. Bank, N.A.*, No. 12-cv-02506-LB, 2014 WL 2734953, at *15 (N.D. Cal. June 13, 2014) ("The claims are typical. The allegations here are that Plaintiffs had identical form contracts, and the policies were applied uniformly[.]"); *Rodman*, 2014 WL 988992, at *13 (typicality satisfied where plaintiff "is bringing these claims on behalf of Proposed Class Members who suffered the same alleged breach of contract injury, based on the same conduct"); *Vedachalam*, 2012 WL 1110004, at *10-11 ("Further, even if mutual mistake rendered the compensation term ambiguous, Defendants drafted the contract, so the ambiguous term would be construed in favor of Plaintiff Beri and the other class members. Thus, the Court finds that the

interests of the named Plaintiffs are reasonably co-extensive with the absent class members and that the typicality requirement has been met.").

## V. Dulberg and Napoli Shkolnik are adequate class representatives because they have no conflicts with the class and are vigorously prosecuting this case.

"The adequacy requirement of Rule 23(a)(4) permits certification only if 'the representative parties will fairly and adequately protect the interests of the class.'" *Hofstetter*, 2011 WL 1225900, at *9 (Alsup, J.). "This factor has two requirements: (1) that the proposed representative plaintiffs and their counsel do not have any conflicts of interest with the proposed class; and (2) that the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class." *Id.* Dulberg and Napoli Shkolnik satisfy these criteria.

Dulberg "is bringing these claims on behalf of Proposed Class Members who suffered the same alleged breach of contract injury, based on the same conduct [Dulberg] shares with the Proposed Class Members[.]" *Rodman*, 2014 WL 988992, at *13. As such, "[t]here is no reason to believe [Dulberg's] interests or Proposed Class Counsel's interests are not aligned with the members of the Proposed Class, nor that Proposed Class Counsel is likely to be an inadequate representative." *Id.*

Dulberg has also diligently worked with Napoli Shkolnik to vigorously prosecute this case. (*See* Dulberg Declaration ¶¶ 2-6; FAC ¶ 41.) *See, e.g., Ellsworth*, 2014 WL 2734953, at *18 (adequacy requirement satisfied where plaintiffs "worked actively with counsel to prepare and 'vigorously' prosecute the case, have no conflicts, and will represent the class members' interests as if they were their own").

Thus, Dulberg and Napoli Shkolnik are adequate class representatives.

## VI. Common issues predominate because this case turns on the interpretation of a form agreement.

"The predominance inquiry of Rule 23(b)(3) asks whether proposed classes are sufficiently cohesive to warrant adjudication by representation. The focus is on the relationship between the common and individual issues." *Vedachalam*, 2012 WL 1110004, at *11 (quotation marks omitted). "When common questions present a significant aspect of the case and they can be resolved for all

members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id.* (quotation marks omitted).

The predominance requirement is generally satisfied in cases involving the interpretation of a form agreement. *See, e.g., Ellsworth*, 2014 WL 2734953, at *20 ("[C]ourts routinely certify class actions regarding breaches of form contracts. This authority supports the conclusion that *common questions predominate when, as here, they involve form contracts* and standardized policies and practices[.]") (emphasis added; citation omitted); *Rodman*, 2014 WL 988992, at *9 ("The Court does not yet reach the question of how the alleged contract should be interpreted, but it can determine after rigorous analysis that there is no obstacle to commonality or predominance. The scope and proper interpretation of the objective words of the parties' agreement is a common question that applies commonly to all members of the class, is an issue whose resolution will drive resolution of the litigation, and will predominate over any individualized issues."); *Vedachalam*, 2012 WL 1110004, at *14-15 ("[G]iven that the DTA was a form adhesion contract, the understanding of the individual class members of its terms is not relevant. Instead, the Court will effectuate the reasonable expectations that an employee would have of the meaning of the contract . . . . Accordingly, the Court finds that Plaintiffs have met their burden to demonstrate that issues for the breach of contract claim common to the national class predominate over issues affecting only individual members."); *In re Med. Capital Sec. Litig.*, No. 09-cv-1048-DOC, 2011 WL 5067208, at *3 (C.D. Cal. July 26, 2011) ("Defendants acknowledge that Plaintiffs' breach of contract claim involves alleged violations of standardized contracts (the NISAs), which existed in substantially identical form across all MedCap SPCs. *Courts routinely certify class actions involving breaches of form contracts.*") (emphasis added) (collecting cases); *Ewert v. eBay, Inc.*, No. 07-cv-02198-RMW, 2010 WL 4269259, at *7 (N.D. Cal. Oct. 25, 2010) ("[W]hen there is a standardized agreement like the form contract at issue in this case, the agreement is interpreted wherever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing . . . . Accordingly, in construing the form contract between eBay and class members, the court need not delve into the actual knowledge of individual class members. The court therefore concludes that plaintiffs' breach

11

of contract claim does not raise individual issues likely to be the object of most of the court's and the parties' efforts.") (quotation marks and citation omitted).

The result should be no different here.

**VII. Damages are calculable from the ride data that Uber provided.**

"The potential existence of individualized damage assessments . . . does not detract from the action's suitability for class certification." *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1089 (9th Cir. 2010). At this stage, plaintiffs must only "be able to show that their damages stemmed from the defendant's actions that created the legal liability." *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) (citing *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1435 (2013)). For example, in *Leyva*, which involved purported wage-and-hour violations, the district court denied class certification on the basis that "the damages inquiry will be highly individualized." *Id.* at 513 (quotation marks omitted). The Ninth Circuit reversed because damages "could feasibly and efficiently be calculated [from defendant's records] once the common liability questions are adjudicated." *Id.* at 514.

Accordingly, what is required is not a firm damages calculation, but a simple showing of the evidence that could be used to calculate damages connected to the applicable theory of liability. *Id.* Detailed economic models are not necessary. *See, e.g., Estakhrian v. Obenstine*, 320 F.R.D. 63, 89 (C.D. Cal. 2017) (certifying breach of contract subclass even though "plaintiffs did not provide a damages model for the subclass . . . as the specificity and extent of the harm suffered by these class members is clear"); *Sateriale v. RJ Reynolds Tobacco Co.*, No. 09-cv-08394-CAS(SSx), 2014 WL 7338877, at *11 (C.D. Cal. Dec. 19, 2014) (certifying breach of contract class based on deposition testimony regarding the value of redemption points, not the "use of complex regression models"); *Rodman*, 2014 WL 988992, at *9 ("If Plaintiff can prevail on the merits on its theory of the contract, all Class Members will have damages in the amount of the undisclosed fees, and calculating damages is a simple matter of refunding those charges."); *Rosales v. El Rancho Farms*, No. 09-cv-00707-AWI-JLT, 2014 WL 321159, at *6-7 (E.D. Cal. Jan. 29, 2014) (declining to decertify class where damages, including for breach of contract, could be shown by "a simple calculation"); *Astiana v. Kashi Co.*, 291 F.R.D. 493, 506 (S.D. Cal. 2013) (certifying class including breach of contract claims based on plaintiffs'

representation "that they can calculate the total restitutionary damages based upon sales, profits and prices data from records generally maintained by [defendant]").

Dulberg meets the applicable standard. Uber has provided a detailed Excel spreadsheet that contains ride-by-ride data for every member of the class over the relevant period. (Dressel Declaration ¶ 8, Ex. C.) That data allows Dulberg to calculate how much class members would have been paid had Uber compensated them based on the upfront Fare, rather than the backend Fare. (*Id.*) At that point, calculating damages merely involves subtracting what the class members were paid from what they should have been paid. (*Id.*)

## VIII. A class action is superior to other methods for adjudicating this case.

"Rule 23(b)(3) requires the Court to determine whether 'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Chastain*, 2008 WL 11333691, at *12. "The rule identifies factors relevant to this inquiry, including '(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.'" *Id.* (quoting Fed. R. Civ. Proc. 23(b)(3)). Each of these factors weighs in favor of certification.

*First*, "it is not likely that the potential damages claims of individual plaintiffs are sizeable enough to make individual actions feasible[.]" *Id.* The class contains thousands of individuals who gave only a small number of upfront rides and have minimal damages. (*See* Dressel Declaration ¶ 5, Ex. B.) "This factor favors treating this case as a class action." *Chastain*, 2008 WL 11333691, at *12 ("Plaintiff's interest payments were only $2,000, which he indicates is typical for the class. Although not de minimus, this amount is small enough that it probably would not provide individual class members an incentive to pursue individual claims against the corporate defendants here."). *See also Ellsworth*, 2014 WL 2734953, at *29 ("Aggregation in a class action can be efficient when many individuals have small damages because absent a class suit, it is unlikely that any of the claimants will be accorded relief. The point of the superiority analysis is a focus on efficiency and economy so that appropriate

cases may be adjudicated most profitably on a representative basis.") (citation omitted); *Vedachalam*, 2012 WL 1110004, at *18 ("While the court in *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001), found that the superiority factor weighed against class certification when damages suffered by *each* class member were large, in that case, the court found that the damages for each class member exceeded $50,000. *Id.* at 1190-91. Here, Defendants acknowledge that one of the named Plaintiffs seeks under $25,000 in damages.") (emphasis in original).

*Second*, other than a few subsequently-filed copycat lawsuits, there is no related litigation, which favors class treatment. *See Chastain*, 2008 WL 11333691, at *12.

*Third*, the TSA contains a California choice-of-law clause and a forum-selection clause that requires the parties to litigate in San Francisco. As such, "it is reasonable to litigate the action in a single forum," which "favors class-action treatment." *Id.*

*Finally*, "[m]aintaining the claims in a single forum is likely to facilitate management by avoiding duplicative proceedings in other fora" and "the risk of inconsistent results." *Id.* at *13.

Thus, "[r]esolving the Proposed Class Members' claims for breach of a form contract in a class action is a superior method of resolving the dispute than conducting litigation on an individual basis." *Rodman*, 2014 WL 988992, at *12. *See also Ellsworth*, 2014 WL 2734953, at *30 ("The main factors here militating in favor of the superiority of a class action are the small individual claims, the common theories of liability, and the form contracts and standard policies. Concentrating litigation thus makes sense for efficiency and economy.") (citation omitted); *Ewert*, 2010 WL 4269259, at *12 ("In this case [involving a form agreement], . . . a class action would be manageable since the focus of the litigation would be on common issues. Consequently, the court finds class treatment to be superior to individual adjudications.").

## IX. The proposed class is ascertainable because its members can be objectively determined based on the records that Uber produced.

"In addition to the explicit requirements of Rule 23, an implied prerequisite to class certification is that the class must be sufficiently definite." *Hofstetter*, 2011 WL 1225900, at *12 (Alsup, J.). Here, membership in the proposed class is based on objective criteria (*i.e.*, whether a driver worked for

14

UberX or Uber Select, opted out of arbitration, and transported a passenger who was charged an upfront fare) and class members are readily identifiable from the spreadsheet that Uber produced. (*See* Dressel Declaration ¶ 5, Ex. B.) That satisfies the ascertainability requirement. *See, e.g.*, *Abdeljalil*, 306 F.R.D. at 308 ("This Court agrees with plaintiff that the class here is ascertainable because class members likely can be determined by objective criteria based on defendant's business records[.]"); *Ellsworth*, 2014 WL 2734953, at *13 ("That information is ascertainable from the records, even if it will entail some effort on the part of counsel for both parties to identify the class members.") (quotation marks omitted); *Rodman*, 2014 WL 988992, at *15 ("Plaintiff has submitted evidence indicating that Defendant maintains sufficient records to determine which Safeway.com customers registered . . . and placed orders during these time periods   . . . The class definition appears to be sufficiently definite and the identity of the individual members ascertainable."); *Hofstetter*, 2011 WL 1225900, at *12 (Alsup, J.) (class ascertainable where "[a]ll the parameters for membership . . . are objective criteria, and defendants' business records should be sufficient to determine the class membership status of any given individual").

**X. The Court should appoint Napoli Shkolnik as class counsel.**

In appointing class counsel, the court "must consider[] (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1). Napoli Shkolnik has well-qualified attorneys; it has a record of achieving success for its clients; it has worked extensively on this case, both in the investigatory and litigation phases; it has significant experience handling class actions and breach of contract claims; it has command over the law governing this case; and it has extensive financial and human resources, which it has devoted to this case. (*See* Maslo Declaration ¶¶ 2-14; FAC ¶ 44 ("The representative and his chosen attorneys are familiar with the subject matter of the lawsuit and have full knowledge of the allegations contained in this complaint so as to be able to assist in its prosecution. In addition, the representative's attorneys are competent in the relevant areas of the law and have sufficient

experience to vigorously represent the Class. Furthermore, the resources available to counsel ensure that the litigation will not be hampered by a lack of financial capacity. Plaintiff's attorneys have sufficient financial resources and are willing to absorb the costs of the litigation."). Accordingly, the Court should appoint Napoli Shkolnik as class counsel. *See, e.g., Vedachalam*, 2012 WL 1110004, at *19 (appointing class counsel where "Plaintiffs represent that their counsel . . . have invested significant time and resources to investigating and developing the legal claims in this case thus far, that they are seasoned and experienced in handling class actions of this nature, that they are knowledgeable of the relevant law, and that they will continue to commit ample resources to representing the class").

## **CONCLUSION**

The Court should grant Dulberg's motion for class certification and appoint Napoli Shkolnik as class counsel.

Dated: December 21, 2017

Respectfully submitted,

*/s/ Paul B. Maslo*
Paul B. Maslo (admitted *pro hac*)
Andrew J. Dressel (admitted *pro hac*)
NAPOLI SHKOLNIK PLLC
360 Lexington Avenue, 11th Floor
New York, New York 10017
Telephone: (212) 397-1000
Fax: (646) 843-7603
Email: pmaslo@napolilaw.com
       adressel@napolilaw.com

*Counsel for Martin Dulberg*

## **CERTIFICATE OF SERVICE**

The undersigned attorney certifies that on December 21, 2017, he electronically filed a copy of the attached via the CM/ECF filing system, which sent notification of such filing to all Filing Users.

*/s/ Paul B. Maslo*