IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN DULBERG, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., and RASIER, LLC,<br><br>Defendants. | No. C 17-00850 WHA<br><br>**ORDER GRANTING MOTION FOR CLASS CERTIFICATION** |

**INTRODUCTION**

In this putative class action for breach of contract, plaintiff moves to certify a class. The motion is **GRANTED**.

**STATEMENT**

Plaintiff Martin Dulberg asserts a single breach of contract claim against defendants Uber Technologies, Inc., and its subsidiary Rasier LLC (collectively, "Uber"), on behalf of a putative class of Uber drivers. Dulberg signed up as a driver for the UberX program in May 2014 and as a driver for the UberSelect program in February 2015. A "Technology Services Agreement" dated December 11, 2015 (the "driver agreement"), governed the compensation scheme between Uber and its drivers during the relevant time period.

The terms of the driver agreement have been described in a prior order (Dkt. No. 52) and need not be repeated in detail here. In brief, under the driver agreement, drivers like

1  Dulberg could charge passengers (1) a "Fare" calculated based on the distance and time of the
2  ride, (2) Uber's "Booking Fee," and (3) any applicable tolls, taxes, or fees for the ride. Uber
3  collected these amounts from passengers on Dulberg's behalf and withheld (1) its Booking Fee
4  plus (2) a "Service Fee" equal to 20 percent of each UberX ride and 28 percent of each
5  UberSelect ride before remitting anything to Dulberg.

In late 2016, Uber's policy changed from calculating the price for each ride *after* the ride to calculating the price upfront *before* the ride. This new "upfront pricing" policy, according to Dulberg, violated the driver agreement because Uber used aggressively *estimated* time and distance amounts to calculate costs to passengers but continued to use *actual* time and distance amounts to calculate driver compensation, keeping the difference for itself. This, according to Dulberg, effectively altered the fixed percentage-based breakdown of Fares between drivers' remittances and Uber's Service Fees, contrary to the driver agreement.

A prior order denied Uber's motion to dismiss Dulberg's claim (*ibid.*). Discovery followed. Uber produced a spreadsheet that identified ride-by-ride data over the time period in question for over nine thousand drivers who opted out of arbitration (*see* Dkt. No. 66-8). Based on this data, Dulberg filed a motion to certify a class of "[a]ll natural persons nationwide who (1) worked as a driver for UberX or UberSelect; (2) opted out of arbitration; and (3) transported a passenger who was charged an upfront fare before they accepted Uber's updated fee addendum, which it issued on May 22, 2017" (Dkt. No. 67 at 7). This order follows full briefing and oral argument.[1]

**ANALYSIS**

1. **LEGAL STANDARDS.**

Federal Rule of Civil Procedure 23(a) provides, "One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact

---

[1] After Dulberg filed his amended complaint on May 15 but before Uber filed its motion to dismiss on June 19, Uber updated the fee addendum to the driver agreement to calculate driver compensation using *actual* as opposed to *estimated* time and distance amounts, and to shift away from percentage-based Service Fees. The driver agreement now calculates Service Fees as "the Rider Payment minus: (a) the Fare; (b) Tolls; (c) any other fees retained by us (*e.g.*, booking fee); and (d) applicable taxes and surcharges" (Dkt. No. 67-4).

1  common to the class; (3) the claims or defenses of the representative parties are typical of the
2  claims or defenses of the class; and (4) the representative parties will fairly and adequately
3  protect the interests of the class." Rule 23(b) sets forth three conditions under which, if the
4  prerequisites of Rule 23(a) are satisfied, a class action may be maintained. Class certification is
5  appropriate if a plaintiff meets all the prerequisites of Rule 23(a) and at least one condition of
6  Rule 23(b). *Abdullah v. United States Sec. Assocs., Inc.*, 731 F.3d 952, 956–57 (9th Cir. 2013).

**2.  RULE 23(a).**

**A.  Numerosity.**

Numerosity is satisfied if "the class is so numerous that joinder of all members is impracticable." F.R.C.P. 23(a)(1). There is no dispute that the proposed class satisfies this requirement (*see* Dkt. No. 70-4 at 11).

**B.  Commonality.**

Commonality is satisfied if "there are questions of law or fact common to the class." F.R.C.P. 23(a)(2). The party seeking class certification must show that their claims depend on a common contention "capable of classwide *resolution* — which means that determination of its *truth or falsity* will resolve an issue that is central to the validity of each one of the claims in one stroke." *Stockwell v. City & Cty. of San Francisco*, 749 F.3d 1107, 1112 (9th Cir. 2014) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). There is no dispute that the proposed class satisfies this requirement (*see* Dkt. No. 70-4 at 11).

**C.  Typicality.**

Typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." F.R.C.P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff[], and whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th

1    Cir. 2010) (quotations omitted).  "Under the rule's permissive standards, representative claims
2    are 'typical' if they are reasonably co-extensive with those of absent class members; they need
3    not be substantially identical." *Hanlon*, 150 F.3d at 1020.  There is also no dispute that the
4    proposed class satisfies this requirement (*see* Dkt. No. 70-4 at 11).

### D.     Adequate Representation.

A proposed class representative is adequate if they "will fairly and adequately protect the interests of the class." F.R.C.P. 23(a)(4).  Our court of appeals has explained that a representative meets this standard if they (1) have no conflicts of interest with other class members and (2) will prosecute the action vigorously on behalf of the class. *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).  Here, Uber contends Dulberg is an inadequate class representative because he has a conflict of interest with other class members.  Uber cites the declaration of its economics expert, Justin McCrary, for the proposition that most of the putative class actually received *higher* compensation and therefore *benefitted* from Uber's upfront-pricing policy.  Thus, Uber argues, even if Dulberg himself would have been slightly better off under his theory of the driver agreement, the majority of the putative class would have been worse off (*see* Dkt. Nos. 70-4 at 17–19, 70-13 ¶¶ 28–46).

Dulberg does not dispute Uber and McCrary's analysis in his reply brief.  Instead, he argues that the conflict can be resolved by redefining the class as "[a]ll natural persons nationwide who (1) drove for UberX or UberSelect; (2) opted out of arbitration; (3) transported a passenger who was charged an upfront Fare before May 22, 2017, when Uber issued its updated fee addendum; and *(4) made less money overall on rides where they transported passengers who were charged an upfront Fare because they were paid on a Fare calculated based on actual time and distance values instead of the upfront Fare calculated based on estimated time and distance values*" (Dkt. No. 72-4 at 4).

Having anticipated Dulberg's tactic, Uber argues in its opposition brief that the conflict of interest cannot be remedied by simple redefinition of the class.  Uber cites various decisions for the proposition that "fail-safe" classes, which are defined by the merits of their legal claims, present fairness problems and cannot be certified because they are inherently unascertainable

4

1    and unmanageable prior to a finding of liability (*see* Dkt. No. 70-4 at 18–19).  As Dulberg
2    points out, however, the proposed redefinition would not create a "fail-safe" class because no
3    finding of liability is required to determine its boundaries.  Rather, as Uber's own expert
4    demonstrated on the instant motion, Uber's records can be used to precisely identify the
5    members of the proposed redefined class.  And, while it would inhere in the class definition that
6    members would have received higher compensation under Dulberg's theory of the driver
7    agreement, whether or not said theory has merit would remain an open question.  This order
8    therefore concludes Dulberg's proposed redefined class would avoid the conflict of interest
9    problem without creating an impermissible "fail-safe" class.

10   During oral argument, counsel for Uber focused on the different argument that Dulberg
11   still has a conflict of interest with drivers who would *not* fall into the proposed redefined class
12   but who remained subject to the driver agreement during the relevant time period.  This
13   argument assumes but offers no authority for the premise that a class action for breach of
14   contract must include as class members every party to the contract at issue.  Possibly, Uber's
15   point that Dulberg's theory would actually be worse for most drivers will enjoy more force on
16   the merits of his claim.  For present purposes, however, Uber's argument does not make
17   Dulberg an inadequate representative for the proposed redefined class.

18   Uber also contends Dulberg is an inadequate class representative because he is
19   vulnerable to unique defenses.  *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.
20   1992) (class certification should be denied if "there is a danger that absent class members will
21   suffer if their representative is preoccupied with defenses unique to it").  Dulberg admitted in
22   deposition that, by the end of September 2016, he knew his Fare was based on something other
23   than the upfront price paid by the passenger (*see* Dkt. No. 70-7 at 65:9–66:5).  He nevertheless
24   went on to take 185 rides between October 1, 2016, and the commencement of this lawsuit
25   (Dkt. No. 70-13 ¶ 18).  Uber argues that this subjects him to a ratification or estoppel defense
26   under California law (*see* Dkt. No. 70-4 at 19–21).  Significantly, however, Uber asserts in the
27   same breath that it "would be able to develop evidence that other drivers in the putative class
28   likely had similar information . . . subjecting them to the same defenses that apply to [Dulberg]"

5

(*id.* at 20). In other words, per Uber's own argument, the defenses it describes are not unique to Dulberg. Uber's real point seems to be that delving into such defenses would require individualized inquiries, thereby raising a predominance problem under Rule 23(b). This order therefore addresses this argument below within the context of the predominance inquiry.[2]

Uber does not otherwise challenge the adequacy of Dulberg or his counsel, Napoli Shkolnik PLLC, as class representatives. Uber does not dispute that they would prosecute this action vigorously on behalf of class members. Dulberg, for his part, has actively pursued his grievances with Uber's application of the driver agreement, both prior to and during this litigation (*see* Dkt. No. 67 at 5–6). Napoli Shkolnik specializes in class action and commercial litigation and has experience handling breach of contract claims (*id.* at 6, 15–16). This order finds Dulberg and his counsel to be adequate representatives as required by Rule 23(a)(4).

**3.   RULE 23(b).**

Dulberg contends he satisfies the third condition of Rule 23(b), which provides:

> A class action may be maintained if Rule 23(a) is satisfied and if . . . the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

---

[2] In the "Factual Background" section of its opposition brief, Uber devotes two paragraphs to accusations that Dulberg used various improper tricks to make more money off of Uber — for example, by taking the scenic route on rides — and was once suspended from Uber for a period of two weeks as a result of such tricks (*see* Dkt. No. 70-4 at 9–10). The point of these accusations — other than to smear Dulberg's character — remains unclear, and they do not come up again in Uber's arguments proper. This order therefore does not consider them further.

6

### A. Predominance.

Dulberg contends common issues predominate because this action primarily turns on the interpretation of the driver agreement, as laid out in the prior order denying Uber's motion to dismiss (Dkt. No. 67 at 10–12). Interpretation of that agreement will, of course, apply on a class-wide basis. Uber offers three responses, none persuasive. *First*, Uber contends individualized damages inquiries will predominate because some drivers actually benefitted from Uber's application of the driver agreement (Dkt. No. 70-4 at 13–15). As stated, however, Dulberg proposed in his reply brief to redefine the class to exclude such drivers. Again, Uber's argument may enjoy some force on the merits of this action. For present purposes, however, it fails to show that individual issues predominate and defeat class certification.

*Second*, Uber contends individual drivers may have had their damages offset by the subjective value they placed on "price certainty" and "risk avoidance" resulting from Uber's upfront-pricing policy (*see id.* at 15–16). Uber's own argument, however, relies on McCrary's citation to the "basic tenet of economics that in general people place a positive value on those factors" (*ibid.*). Insofar as Uber's argument turns on such general principles, it remains susceptible to a common method of proof. Significantly, despite Uber's insistence that "[t]his is no mere hypothetical issue," it identifies no member of the putative class who actually subscribed to this "basic tenet of economics" in entering the driver agreement. Nor, as Dulberg points out, does the driver agreement itself contain any terms incorporating the subjective value of such factors. At this stage, Uber's hand-wringing over the subjective motivations of putative class members remains too hypothetical and attenuated from our facts to show that individual issues will predominate over the contract dispute at the core of this case.

*Third*, as stated, Uber points out that it can assert affirmative defenses against putative class members based on ratification or estoppel. This, Uber claims, will devolve into individualized inquiries regarding "what a driver saw and knew and when, and whether the driver continued to drive" (*see* Dkt. No. 70-4 at 8–9, 20–21). Significantly, however, the actual defenses described by Uber again remain largely susceptible to common methods of proof. Uber posits, as an example, that "drivers may have learned about upfront pricing . . . from

7

Uber's own website," "from communications or emails in which Uber responded to driver inquiries," or from message boards dedicated to Uber drivers (*see id.* at 9, 20). But insofar as Uber's defenses turn on the potential legal implications of public information available on its website or message boards, those implications can be determined on a class-wide basis. It may turn out, for example, that the information available on Uber's website and message boards was inadequate as a matter of law to trigger any ratification or estoppel defense.

Possibly, some individualized questions will linger as to circumstances unique to specific drivers, but at this stage that possibility pertaining to a relatively small corner of this case does not predominate over centerpiece, class-wide issues like the interpretation and alleged breach of the driver agreement. If individualized questions come into greater focus as this litigation continues to the point that they become unmanageable or threaten to overwhelm class-wide issues, the class can be decertified. At this point, however, this order concludes that class-wide issues predominate over individualized questions as required by Rule 23(b)(3).

### B. Superiority.

Dulberg contends a class action is a superior method of adjudicating the putative class members' claims because no member would have sufficient damages to separately prosecute claims in individual actions. Nor does any related or similar litigation weigh against adjudication of the putative class members' claims in this action. Moreover, there is no dispute that California law governs the driver agreement, making this a suitable forum (*see* Dkt. No. 67 at 1, 13–14). Uber does not dispute any of this in its opposition, nor does it otherwise argue against the superiority of class-wide adjudication here. This order concludes that a class action is also a superior method of adjudication in this case as required by Rule 23(b)(3).

### CONCLUSION

To the foregoing extent, plaintiff's motion for class certification is **GRANTED**. The following class is **CERTIFIED**:

> All persons nationwide who (1) drove for UberX or UberSelect; (2) opted out of arbitration; (3) transported a passenger who was charged an upfront Fare before May 22, 2017, when Uber issued its updated fee addendum; and (4) made less money overall on rides where they transported passengers who were charged an upfront Fare because they were paid on a Fare calculated based on

8

> actual time and distance values instead of the upfront Fare
> calculated based on estimated time and distance values.

This class definition shall apply for all purposes, including settlement.  Plaintiff Martin Dulberg is hereby **APPOINTED** as class representative.  Plaintiff's counsel from the law firm of Napoli Shkolnik PLLC are hereby **APPOINTED** as class counsel.

By **MARCH 1 AT NOON**, the parties shall jointly submit a proposal for class notification, with the plan to distribute notice by **MARCH 22**.  In crafting their joint proposal, counsel shall please keep in mind the undersigned judge's guidelines for notice to class members in the "Notice Regarding Factors to be Evaluated for Any Proposed Class Settlement" filed concurrently with this order.

This order shall remain under seal until **FEBRUARY 16 AT NOON**, after which it will be unsealed and filed on the public docket in its entirety unless one or more parties move to keep specific portions of the order under seal.

**IT IS SO ORDERED.**

Dated: February 14, 2018.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

9