IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MARTIN DULBERG, individually and on behalf of all others similarly situated,

Plaintiff,

v.

UBER TECHNOLOGIES, INC., and RASIER, LLC,

Defendants.

No. 17-00850 WHA

**ORDER RE MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND REQUEST FOR EXPENSES AND ATTORNEY'S FEES**

## INTRODUCTION

In this breach-of-contract class action, plaintiff moves for final approval of a proposed settlement agreement. Defendants do not oppose. To the extent stated below, final approval of class settlement is **GRANTED**. The motion for attorney's fees and expenses is **GRANTED IN PART**.

## STATEMENT

The background of this action is set forth in prior orders (*see, e.g.*, Dkt. No. 52). In short, plaintiff Martin Dulberg brought this class action on behalf of Uber drivers against defendants Uber Technologies and Rasier, LLC (collectively, "Uber"), asserting Uber breached its contract with Uber drivers. Uber's policy changed in late 2016. Plaintiff alleged the new policy violated his contract with Uber because Uber calculated costs to passengers by estimating time and distance amounts before the ride and then compensated drivers based on

actual time and distance amounts — keeping the difference for itself. In February 2018, an order certified the following class (Dkt. No. 80):

> All natural persons nationwide who (1) drove for UberX or UberSELECT; (2) opted out of arbitration; (3) transported a passenger who was charged an upfront Fare before May 22, 2017, when Uber issued its updated fee addendum; and (4) made less money overall on rides where they transported passengers who were charged an upfront Fare because they were paid on a Fare calculated based on actual time and distance values instead of the upfront Fare calculated based on estimated time and distance values.

In August 2018, plaintiff originally moved for preliminary approval of a proposed class settlement in the amount of $345,622 (Dkt. No. 107). Defendants did not oppose. The settlement amount represented 46 percent of the maximum recovery plaintiff's expert opined the class could recover and the maximum Uber's expert opined the class could recover.

After some court-ordered changes to the settlement agreement, including direction to alter the "released claims" section, an order preliminarily approved the settlement agreement (Dkt. No. 121). Thereafter, an order approved, as to form and content, the notice of class action settlement and a schedule governing the remaining proceedings in the action (Dkt. No. 123).

In February 2019, plaintiff moved for final approval of the proposed class settlement of $345,622 and requested attorney's fees and reimbursement for expenses (Dkt. No. 130). Specifically, class counsel sought $40,430.01 in expenses (including settlement administrator expenses), $103,687 in attorney's fees (comprising 30 percent of the *gross* settlement fund and 33.97 percent of the *net* settlement fund), and an incentive award for the lead plaintiff in the amount of up to $5,000.

One class member informally objected to the settlement as too low. The objector's complaint — that class members will receive chump change in this settlement — rang true. According to data presented at the final approval hearing, fourteen class members would receive one cent from this settlement, 1,300 class members would receive less than $1.75, 2,059 class members would receive less than $5, and 3,383 class members would receive less than $20. All will be asked to release claims against Uber in exchange for these amounts. On the

1 other side of the ledger, only 401 class members would receive over $100. The total class
2 comprised of 4,594 members.

3     After a hearing on final approval and two separate requests for further information, an
4 order rejected the settlement (Dkt. Nos. 149, 151, 153). This low-end settlement could not
5 justify any potential benefit of the settlement to the class as a whole.

6     In June 2019, the parties reworked the terms of the settlement as follows. *First*, the
7 minimum payment each class member would receive would be $20.00. That is, class members
8 who previously would have received less than $20, would now receive $20; class members who
9 previously would have received more than $20, would still receive the same amount as before.
10 This change increased the total settlement amount from $345,622 to as much as $395,000.
11 *Second*, counsel agreed to limit its request for attorney's fees to 25 percent of the *net* settlement
12 amount. *Third*, Uber agreed to pay administrative costs for any revised class notice. Any new
13 costs would not be paid out of the settlement fund.

14     In July 2019, after oral argument, an order preliminarily approved the re-worked
15 settlement, provided the notice would be sent via first-class mail. In addition, the order required
16 two modifications to the notice to more specifically inform class members the precise amounts
17 class counsel will seek, in addition to the specific amounts that class member would receive
18 under the settlement. After the parties made those modifications, in August 2019, an order
19 granted preliminary approval of the revised settlement and approved the class notice.

20     Turning to class notice, in August 2019, the settlement administrator sent notice to 4,521
21 class members. As an aside, this deviated from the prior proposed settlement, whereby notice
22 had been sent to 4,584 class members (ten class members had previously requested to be
23 excluded). Perhaps this difference materialized as a result of the settlement administrator's
24 whittling of the class list after a "review[ of] the file for duplicate entries" (Dkt. No. 166 ¶ 5).
25 Why only now these records were identified as duplicates remains a mystery.

26     In any event, of the 4,521 notices sent, the settlement administrator calculated that 34
27 class notices did not deliver. In truth, however, 133 notices did not deliver.

More specifically, the math is as follows. Of the 4,521 notices sent, the administrator sent sixteen notices via e-mail and 4,505 notices via postal mail. All of the e-mailed notices delivered. Of the 4,505 notices sent via postal mail, 575 did not initially deliver — 526 returned *without* a forwarding address and 49 returned *with* a forwarding address. As to the 526 notices which returned *without* a forwarding address, an updated address could be found for 428 notices. The administrator then mailed these 428 notices a second time. After this second mailing, 33 of the 428 notices did not deliver. This group therefore resulted in 131 notices which did not deliver. As to the 49 notices which returned *with* a forwarding address, the administrator forwarded all 49 notices. Six notices did not deliver a second time. After utilizing address verification searches, five new addresses became available. Only one of those five returned a third time. As such, this group resulted in two notices which did not deliver. In sum, as of October 30, 2019, 133 of the 4,521 notices sent did not deliver.

Thirteen class members requested to be excluded from the revised settlement. The rejected settlement had previously yielded eight requests for exclusion. Three class members overlapped, having now requested to be excluded twice.

One class member objected. This class member objected "to the settlement in this case as being too large" (Dkt. No. 166-4). In particular, the objector noted that he "think[s] this suit is one driver and one lawyer trying to make some dishonest money off of a flaw in our regulatory and legal systems" and that he "would be happy if the whole thing got dismissed" (*ibid*.). In other words, according to the objector, the settlement was not too unfair to the class, the settlement was too unfair to Uber.

Under the revised settlement agreement, the plan of distribution for the settlement will be as follows. *First*, within fifteen days of the first date after judgment is entered, the settlement administrator will subtract the number of individuals who opted-out from the class and then deduct from the $345,622 settlement: (i) expenses (including settlement administrator expenses); (ii) attorney's fees; and (iii) the lead plaintiff's award.

4

*Second*, within sixty days of final approval, Uber will mail a check to the class members in the amount of their individual settlement share. The checks will be mailed to the address in Uber's records and will remain valid for ninety days.

*Third*, any checks returned without new address information will cause Uber to "make reasonable efforts to promptly identify an updated address and promptly re-mail a check to the extent an updated address is identified" (Dkt. No. 166-2 at II.B.iv). Although the settlement agreement itself is vague as to whether leftover money in the fund would revert back to Uber, counsel explicitly provided at the September 2018 preliminary approval hearing on the *rejected* settlement that leftover money in the fund will be re-allocated to the class members (*see* Dkt. No. 121 at 3). No language has been added to the agreement which would reverse this representation and allow for reversion.

Class counsel now seek $40,430.00 in unreimbursed expenses (including some prior settlement administrator expenses), $65,569.50 in attorney's fees, and an incentive award for the lead plaintiff in the amount of up to $5,000. Defendants do not oppose. This order follows oral argument.

**ANALYSIS**

**1.    FINAL APPROVAL OF PROPOSED CLASS SETTLEMENT.**

Under FRCP 23(e), court approval is required for any settlement agreement that will bind absent class members. When a proposed settlement agreement is presented, the district court must perform two tasks: (1) direct notice in a reasonable manner to all class members who would be bound by the proposal, and (2) approve the settlement only after a hearing and on finding that the terms of the agreement are fair, reasonable, and adequate. FRCP 23(e)(1)–(2).

**A.    Adequacy of Notice.**

The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (citations omitted). It must also describe "the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Mendoza v. Tucson*

*Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980). The undersigned judge previously approved the form, content, and planned distribution of the class notice (Dkt. No. 163). The settlement administrator fulfilled the notice plan (Dkt. No. 166). This order accordingly finds that notice to class members was adequate.

### B. Fairness, Reasonableness, and Adequacy of Proposed Settlement.

A district court may approve a proposed class settlement only upon finding that it is fair, reasonable, and adequate, taking into account (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. FRCP 23(e); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015). Two of the factors are inapplicable here because the class has been and remains certified and there is no governmental participant in this case. For the following reasons and for the reasons stated in the order dated July 22, 2019 (Dkt. No. 161), this order finds the proposed class settlement, fair, reasonable, and adequate under FRCP 23(e).

*First*, plaintiff faces the risk of no recovery. Had the parties continued to litigate, one of four possible legal outcomes would result. Two of these four outcomes present the possibility that the class would receive nothing. That is, if Uber would be found to have not breached the contract at issue or if plaintiff would be found to have waived a breach of contract claim. Against the possibility that Uber's contract interpretation and affirmative defense would prevail, the $345,622 gross settlement fund (in addition to the amounts added to ensure no class member would recover less than $20) offers an immediate and certain award for the class.

*Second*, other than the potential for the class to receive nothing, two legal outcomes remain. A smaller class-size could receive $345,622 (the settlement amount) or this class could receive $747,555. More specifically, assuming Uber breached the contract at issue and no defenses applied, the contract can be interpreted two different ways. On the one hand, the scope of the contract could be limited to the 2,597 drivers who experienced a shortfall in their

6

UberXL, UberPOOL, UberX, and UberSELECT rides, in which case damages would be capped at $345,622 — the settlement amount. On the other hand, the scope of the contract could govern the 4,594 drivers who experienced a shortfall in their UberX and UberSELECT rides, in which case damages would be capped at $747,555. As such, the best-case recovery in this action for this class size would be $747,555. Accordingly, this settlement represents 52.8 percent of the best-case amount while also encompassing the broader group of class-members (this percentage is calculated when factoring that no class member would receive less than $20).

The release of claims, moreover, is limited to the specific facts at issue. Further, the parties reached class settlement after substantial motion practice, class certification, and some discovery. At the time of settlement, plaintiff had achieved class certification of the aforementioned class. Settlement had been reached following months-long discussions, and a single mediation session facilitated by Judge Donna Ryu. The stage of litigation and plaintiff's expert reports authored for class certification indicate that plaintiff had enough information and familiarity with the case to make an informed decision. They also demonstrate that the risk, expense, and complexity of further litigation were substantial.

*Third*, the plan of allocation of settlement proceeds is fair and reasonable. As stated, the net settlement will be distributed after expenses, attorney's fees, lead plaintiff's award, and the settlement administrator's balance are paid out of the settlement fund. The parties do not provide a renewed average settlement award, but the prior average settlement award would be approximately $42.87. This average provides a baseline for recovery as the amounts the class will receive has since increased. As provided at the preliminary approval oral argument in September 2018, the net proceeds will be apportioned to each participating class member with no amount reverting to defendants. Based on the risks of not recovering anything and that this litigation will yield a similarly small recovery if no settlement is approved, this plan of allocation presents a minimally fair baseline recovery to class members.

Should this settlement be declined, there is a significant chance that class members will recover nothing. In addition, continuing to litigate this action will bring more fees and expenses which will further reduce the full potential class recovery. The average shortfall was

7

approximately $162. So, the amount each class member will receive after trial in a best-case scenario, will by and large not meaningfully differ from the current recovery.

Accordingly, having considered the applicable factors, this order finds the proposed class settlement is fair, reasonable, and adequate so as to warrant final approval. The motion for final approval of the proposed class settlement and plan of allocation is **GRANTED**.

### 2. MOTION FOR ATTORNEY'S FEES, EXPENSES, AND INCENTIVE AWARD.

#### A. Expenses.

Class counsel seek to recover from the settlement fund $40,430.00 in litigation expenses. The largest component of these expenses are expert services and the third-party administrator services ($29,793.03). The second largest component are the travel expenses ($4,852.97). Counsel also seek reimbursement for court filing fees ($2,291.77), court reporter expenses ($2,058.40), postage ($597.14), service of process expenses ($593.30), and PACER document service expenses ($243.40) (Dkt. No. 145-4).

The expert expenses, while exorbitant, were reasonable. This action involved highly specific and complex calculations to analyze each Uber driver's fees. The experts retained by plaintiff in connection with this action were (i) GEC Group (damages experts); (ii) Bates White, LLC (consulting experts for class certification); and (iii) Angeion Group (the third-party administrator retained to distribute the class notice, notice of settlement, and handle opt-outs and objections) (Dkt. No 145 ¶ 8). GEC Group charged $21,123.05 for its work. Retained to conduct damages analysis and prepare a related expert report on behalf of plaintiff (and to reply to defendants' damages expert), GEC Group issued four invoices, billing a total of 44.35 hours of work performed by two economists charging at $515 per hour and an office assistant charging $110 per hour. The report, entitled "Analysis of Driver Remittance Shortfalls," and reply report, entitled "Reply to Justin McCrary's Declaration," were both filed on the docket and assessed datasets as to 3,509,088 rides performed by 9,265 Uber drivers (Dkt. Nos. 107-4, 107-6). In considering the complexity and amount of information assessed in this action, the amount of time billed was reasonable.

As to the other expert expenses, Bates White issued two invoices amounting to $2,968.75. Retained to analyze the defendants' expert report in connection with the class certification motion, Bates White billed a total of 6.25 hours of work. Considering the complexity of the analysis in determining this class of thousands of Uber drivers, this amount of time was reasonable. Finally, Angeion Group charged $5,701.23 for its third-party administrator services. Angeion Group set up lists of e-mail addresses and other databases, sent e-mail class notices, processed responses, set up a call center, and continued to maintain that call center (*id*. ¶¶ 9–11). This expense did not include the most recent mailing of class notice. This expense is reasonable to organize and streamline the orderly distribution of this class action involving thousands of Uber drivers.

Ordinarily, three travel expenses would be too vague to be considered reasonable. The first vague entry, billed for $480.10 on July 26, 2017, only stated: "Courtyard Marriott-Travel for Motion to Dismiss." The second entry, billed for $785.78 on January 3, 2018, only stated: "Lowes Regency Hotel-Dulberg Deposition." Finally, the third entry, billed for $706.29 on February 7, 2018, only stated: "Attend Court Hearing." It is unclear whether these expenses were for hotel stays only, and if so, whether the stay had been for one evening or more. Counsel provided no further explanation as to these entries. Still, in light of the reasonable attorney's fees request, these expenses will be permitted here.

After a thorough review, all other expenses were reasonable and a necessary part of the litigation and are of the type customarily billed to a fee-paying client. No class member objected to recovery of these specific costs. As such, the motion for reimbursement of **$40,430.00** in costs is **GRANTED**.

### B. Incentive Award.

Plaintiff requests $5,000 as an incentive award. As stated, defendants do not oppose this request. The work plaintiff performed included background research on the claims, meeting with counsel, producing documents, answering interrogatories, and preparing and traveling from North Carolina to San Francisco for a deposition (Dkt. No. 139-1 ¶ 43).

While this work is appreciated, the undersigned's "Notice Regarding Factors to be Evaluated for Any Proposed Class Settlement" cautions that "[a] request for an incentive payment is a red flag." Incentive awards pose the risk that a class representative has gone along with a settlement, not because it secures a good outcome for the class, but simply for the incentive award. Such awards should therefore be subject to careful scrutiny. Particularly, when the baseline average return for each individual class member will be $42.87, an award of $5,000 is extremely unreasonable. In light of the foregoing, plaintiff's request for an incentive award is **GRANTED IN PART**. An award of $100 is reasonable and will be granted here.

### C. Attorney's Fees.

A district court must ensure that attorney's fees are "fair, adequate, and reasonable," even if the parties have entered into a settlement agreement that provides for those fees. *Staton v. Boeing Co.*, 327 F.3d 938, 963–64 (9th Cir. 2003). "In 'common-fund' cases where the settlement or award creates a large fund for distribution to the class, the district court has discretion to use either a percentage or lodestar method." Our court of appeals has recognized 25 percent of the common fund as a benchmark award for attorney's fees. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). California law authorizes the percentage method for awarding attorney's fees in common fund cases. See *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 503 (Cal. 2016). The undersigned judge finds application of the percentage method to be appropriate under the circumstances.

As stated, class counsel seek $65,569.50 — or 18.97 percent of the gross settlement fund. In light of the $40,430 in expenses and the $100 incentive award, the $345,622 recovery is reduced to a net settlement fund of $305,092. The requested $65,569.50 is 21.49 percent of the net settlement fund. The $20 minimum recovery further increases the potential class settlement to an even higher amount: $395,000. Counsel also worked on a contingent-fee basis despite the risks of litigation, which were substantial in this case. Class counsel worked 968.6 hours on this action and the lodestar totals $700,114 (Dkt. No. 141 ¶ 37). These factors all weigh in favor of the requested attorney's fees payment. The $65,569.50 in requested attorney's fees are fair and reasonable. It is important to reiterate here that in contrast to the

$65,569.50 counsel will receive in fees, the majority of the class will receive a mere $20 under this proposed settlement.

Class counsel's motion for attorney's fees is **GRANTED**. This order awards **$65,569.50** in attorney's fees. Half of this amount shall be paid immediately. The other half shall be paid when class counsel certify that all funds have been properly distributed and the file can be completely closed.

## CONCLUSION

Accordingly, it is hereby ordered as follows:

1. The notice of settlement, as well as the manner in which it was sent to class members, fairly and adequately described the proposed class settlement, the manner in which class members could object to or participate in the settlement, and the manner in which class members could opt out of the class; was the best notice practicable under the circumstances; was valid, due, and sufficient notice to class members; and complied fully with the Federal Rules of Civil Procedure, due process, and all other applicable laws. A full and fair opportunity has been afforded to class members to participate in the proceedings convened to determine whether the proposed class settlement should be given final approval. Accordingly, this order hereby determines that all class members who received the class-action notice and did not opt-out or object are bound by this settlement order.

2. The 133 class members who did not receive the class-action notice and the thirteen class members who requested to be excluded are excluded from the settlement and the released claims. A joint report containing each of these class members' full names must be filed on the docket in a sworn declaration by both parties and the settlement administrator by **NOVEMBER 26, 2019.**

3. This order also finds that the proposed class settlement is fair, reasonable, and adequate as to the class, plaintiff, and defendants; that it is the product of good faith, arms-length negotiations between the parties; and that the settlement is consistent with public policy and fully complies with all applicable provisions of law. The settlement is therefore approved. As set forth in the settlement agreement, within 60 days after judgment is issued, the

settlement administrator shall mail a check to each class members' last known address. **Funds from uncashed checks must be reallocated to the class and may not revert to defendants.** Within 120 days of issuing the initial checks to the class, the parties are hereby **ORDERED** to file a joint status report indicating how many class members cashed their checks and how many class members did not cash their checks.

4. Having considered class counsel's motion for attorney's fees, reimbursement of expenses, and an incentive award, this order hereby awards class counsel attorney's fees of **$65,569.50**. Half of this amount shall be paid immediately. The other half shall be paid when class counsel certify that all funds have been properly distributed and the file can be completely closed. It is possible that the fee award may have to be adjusted downward to account for glitches in the distribution process that sometimes arises. Counsel shall please continue their work to ensure distribution goes smoothly.

5. Class counsel shall also receive **$40,430.00** as reimbursement for their litigation expenses, to be paid from the settlement fund. Half of this amount shall be paid immediately. The other half shall be paid when class counsel certify that all funds have been properly distributed and the file can be completely closed.

6. Lead plaintiff, Martin Dulberg, shall also receive $100 as an award for his efforts in this action.

**IT IS SO ORDERED.**

Dated: November 19, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE